WATSON v. THE WABASH, ST. LOUIS & PACIFIC R'Y Co.

1. **Railroads:** THROWING CARS TOGETHER ON SIDE-TRACK: INJURY TO PERSON UNLOADING CAR: NEGLIGENCE. The plaintiff was a teamster who was engaged at the time in loading lumber, owned by his employer, upon his wagon from a car standing on one of several side-tracks. He had warning of an approaching engine, but not of an approaching car, and he did not know on what track the engine was approaching. With a view of protecting himself and his team from possible danger, which, however, he had no reason to think imminent, he undertook to dismount from the car, and, in doing so, placed his left foot upon a link which projected from the draw-head of a car standing on the same track and near to the car which he was unloading. Just then a car, of whose approach plaintiff had no notice, was thrown against the one on the link of which his left foot was resting, and it was thrown against the car from which he was dismounting, crushing his foot between the draw-heads of the two cars. Under all the circumstances of the case, (see opinion,) *held* (1) that it could not be said as a matter of law that plaintiff was negligent in attempting to dismount when he did. (2) That, since plaintiff was rightfully where he was, and since the car was placed where it was for the purpose of unloading, and since, even if defendant's employes did not know that plaintiff was there, they had reason to anticipate that someone might be there, it was negligence on their part thus to throw the car back, as they did, upon others standing upon the side-track for the purpose of unloading.

2. ———: ———: ———: IMPUTED NEGLIGENCE. In such case the negli-

gence of plaintiff's son, eleven years old, who was on the wagon and saw the car coming, but failed to notify his father of the fact, could not be imputed to the father.

3. ———: ———: ———: RIGHT TO UNLOAD: FREIGHT NOT PAID. In such case, the plaintiff was not a trespasser on account of the fact that the freight had not been paid; since it appears that the defendant had waived its lien for freight.

4. **Pleading:** REDUNDANT AVERMENTS: PROOF: INSTRUCTIONS. Where the petition contains redundant averments, it is not necessary for the plaintiff to prove them, nor for the court to instruct as to them.

5. ———: ———: ———: INSTRUCTIONS REVIEWED AND APPROVED. In the second, third and fourth divisions of the opinion, the instructions given by the court are reviewed in the light of appellant's criticisms, and *held* correct. See opinion.

*Appeal from Pottawattamie District Court.*

FRIDAY, APRIL 24.

ACTION FOR A PERSONAL INJURY. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*D. H. Soloman* and *B. B. Burnett*, for appellant.

*Mynster & Adams*, for appellee.

ADAMS, J.—I. After the introduction of the evidence, the defendant asked the court to direct the jury to render a verdict in its favor. This the court refused to do, and the defendant assigns the ruling as error. The defendant insists that the evidence not only failed to show negligence on its part, but failed to show a want of contributory negligence on the part of the plaintiff.

The circumstances under which the injury was received were substantially as follows: The plaintiff was a teamster, residing at Council Bluffs, and at the time of the injury was engaged in that city in hauling lumber for the Chicago Lumber Company, from the cars on the defendant's track to the company's lumber-yard. He had, just prior to the accident,

1. RAILROADS: throwing cars together on side-track: injury to person unloading car: negligence.

been sent by his employer to a particular car loaded with lumber, with instructions to transfer the lumber to the company's yard. He had stationed his team near the car, the rear of his wagon being towards the car, and had mounted the car, and had loaded from the car, upon the wagon, a small portion of the lumber, when he undertook to dismount. While dismounting, his foot was caught and crushed between the bumper of the loaded car and the bumper of another car which had been standing, detached, about eighteen inches from the loaded car. The loaded car is denominated car A, and the other, car B. The two cars were standing upon one of four side tracks where cars were accustomed to be placed for the purpose of being unloaded. Car B was propelled against car A by another car, called car C, which had been brought in by an engine, and had been thrown back, detached, against car B. The plaintiff did not hear the approach of car C, and was not in any way, by ringing of bell or otherwise, warned of its approach. He was warned of the approach of an engine, and, while he did not know that it was coming on his track, he apprehended that it or a car might be thrown against car B, and that that car might be thrown against car A. The engine was not in his view as he stood on car A, his view being obstructed by car B. But the warning he received caused him to proceed to dismount. In attempting to dismount he appears to have been actuated in part by a regard to his own safety, and in part by a regard to the safety of his horses and wagon. The ends of the pieces of lumber upon the wagon were almost in contact with the car from which he was taking the lumber. If the horses had stepped back, the lumber on the wagon would have been brought in contact with the car; and if the car had been thrown back, as it was in fact, it would have been liable to injure the wagon, if not the horses.

The plaintiff's purpose was to dismount and see whether a car or engine was coming in on his track, and, if it was, to start the horses forward. But, unfortunately, he did not

have time. Car C came back too soon for him, and he was injured in the act of dismounting. The engine, of the approach of which he was warned by a by-stander, does not appear to have come very near him. Car C, it appears, came in rapidly, and with so little noise as not to be observed by him. He complains that the defendant was guilty of negligence in throwing car C back with so much force, and without giving warning of it. The defendant complains that the plaintiff was guilty of negligence in attempting to dismount at all, and also in his mode of dismounting. A link projected from the draw-head of car B, and the plaintiff, in attempting to dismount, placed his left foot on the link, holding onto car A, and intending to step down backward upon his right foot. But before he could reach the ground his left foot was caught, and he pulled himself up again and remained until his foot could be disengaged. He might have jumped off instead of attempting to step off, but he appears to have been deterred from so doing by the fact that the ground was covered with broken rock. He might, perhaps, have stepped directly from the bumper of car A, but it was not very long, and he yielded to the temptation to brace himself by making the link projecting from the other bumper a momentary foot-rest. He might have swung his left foot out beyond the link, and rested it upon the bumper of car B, but for the pin which held the link. He did not, it appears, apprehend an immediate collision, nor greatly apprehend any collision at all; and if two or three seconds more had been allowed him, he would doubtless have alighted in safety. If he is to be justified at all in stepping upon the link, it must be because he was to use it only as a momentary resting-place, and did not apprehend the immediate approach of anything. Possible he was guilty of contributory negligence, but we are not impressed that it was so clearly so that we should be justified in declaring it to be so as a matter of law. It is said, however, that if he had remained upon the car he would not have been injured, and that he was guilty of contributory negli-

gence in not remaining there.    But we cannot so hold.    If the
collision had been apparently imminent, it might have been
a close question as to whether it would not have been negli-
gence to attempt to dismount.    But according to the undis-
puted evidence it was not apparently imminent, nor did the
plaintiff know that a car or engine was approaching on his
track.    He apprehended that it might be so, and sought to
place himself where he could see, and take care of his team
if necessary.

One fact upon which the defendant places some stress
remains to be stated.    The plaintiff's son, a boy about eleven
years old, was in the wagon assisting his father,
2. ——: ——: and saw the car approach and gave no warning.
——: imput-
ed negligence.    It is insisted that he was guilty of negligence,
and that his negligence is to be imputed to the plaintiff.    But,
in our opinion, this would be carrying the doctrine of imputed
negligence much further than the law justifies.    Besides, he
did not, probably, know that his father was going to dismount
until he saw him dismount, nor observe where he placed his
left foot until it was too late, if he observed it at all.    The
collision occured before the plaintiff's right foot reached the
ground.

We come next to consider whether there was any evidence
of negligence on the part of the defendant, and we have to
say that we think that there was.    Cars should not without
warning be violently thrown back against detached cars that
are in process of being unloaded.    It is not, perhaps, entirely
certain that any of the company's employes knew that car A
was being unloaded.    But it was placed where it was for the
purpose of being unloaded.    The company's employes knew,
or should have known, that it was liable to be in process of
being unloaded, and the slightest observation would have
revealed the fact that it was being unloaded.

It is insisted, however, that, even if it were true that the
defendant became liable, the plaintiff is not entitled to
recover, because he has seen fit to predicate the defendant's

liability upon certain facts, and has not proved the existence of those facts. The plaintiff averred that he "was rightfully there," and "with the knowledge and consent of the defendants." It is insisted that the plaintiff has not proved either averment, and that it was necessary, to entitle him to recover, to prove both. But, in our opinion, it was sufficient if the plaintiff proved that he was rightfully there, and that the company was negligent, even though it may not have known that he was there, and may not have expressly consented to his being there. If the plaintiff was rightfully there, the company owed him the duty of such care as is necessary for the safety of all persons engaged as he was; and it was not for the company's employes to close their eyes and excuse themselves by saying that they did not know that anyone was being imperiled. That the plaintiff was, in fact, rightfully there appears to us to be clear. The car had been placed where it was for the purpose of being unloaded by the owner of the lumber; and the owner of the lumber had sent the plaintiff to unload it.

It is said, however, that the defendant had a lien upon the lumber for freight, and that no one had a right to remove it until the lien had been discharged. There is evidence tending to show that the freight had not been paid. But it seems to be certain that the defendant, in its dealings with the Chicago Lumber Company, had not been strict in demanding the freight in advance. One Holmes, the representative of the Chicago Lumber Company, testified in these words: "I usually paid when the freight-bills were presented; sometimes I got the lumber before the bills were presented, and sometimes afterwards." But we do not attach very much importance to this evidence. The transaction was peculiar. There was other evidence showing, we think, conclusively that the lien was waived. The lumber had been consigned to one Deitz. He sold it on the car to one Mott, and the defendant, by direction of Deitz, notified Mott of the arrival, and Mott receipted for the lumber and

sold the same to the Chicago Lumber Company. Deitz remained liable for the freight, and paid it a few days later. We think that taking from Mott a receipt for the lumber was, under the circumstances, a waiver of any claim of a lien.

II.    It is assigned as error that the court misstated the issue.   The instruction assailed is in these words:    "Whether a particular act amounts to negligence or mismanagement is to be determined very largely from the manner in which it is done, and the circumstances surrounding and attending it. In determining this question with 'reference to the present case, the jury must consider the nature of the business in which the servants of the defendant were engaged at the time of the injury; whether they knew, or had any reasonable ground to believe, that the plaintiff was in such position as that he was liable to be injured by the act that they were doing or were about to do; whether any precaution was taken by them to avoid or prevent the injury; whether the act done by them was, when done, under the circumstances under which they did it, calculated to cause an injury to one situated as plaintiff was situated at the time; and the like circumstances."   The counsel for the defendant, in criticising this instruction, say:   "Whether or not the acts of defendant were negligent was to be determined by proof of the averments made in the petition, and not by proof of something not averred, but heard of for the first time in the charge of the court."   This criticism is based upon the idea that the jury should have been specially instructed that to justify a verdict for the plaintiff they should be able to find that the plaintiff was rightfully at the place of the injury, and with the company's knowledge and the company's consent.   But in our opinion it would have been error to so instruct.   If the evidence had shown that the plaintiff was a trespasser, then it may be that the company did not owe him any duty, unless it had knowledge of his danger.   On the other hand, as we have seen, if he was not a trespasser,—that is, if he was rightfully where he was,—the company did owe him a

duty, and was responsible for negligence, even though it did not know he was there.

In our opinion the averments were fuller than was necessary. The essential averment, so far as the defendant's negligence and the plaintiff's freedom from negligence are concerned, is in these words: "While the plaintiff was thus upon said car as aforesaid, the defendant, through the negligence and carelessness of its agents and employes, and without giving the plaintiff any proper and due notice thereof, and time to move away from said car, began to switch, shove, push and throw with their locomotive engine, in a careless and negligent manner, other cars back to and in the direction of the said car upon which the plaintiff was then and there employed and engaged as aforesaid, by reason whereof one of said cars thus thrown and pushed came in the direction of said car on which plaintiff was thus engaged, with great force and violence; and, while said car was so in motion, the plaintiff, using due care and caution on his part, attempted to make his escape from said car on which he was as aforesaid, and in which he would be in danger by reason of the acts aforesaid, and said car thus thrown back struck a car standing on defendant's track a short distance from the aforesaid car, where plaintiff was employed as aforesaid, and pushed the cars together in a violent manner, and caught the right foot of the plaintiff between the draw-heads of the cars where he then was,    *    *    * without any fault or negligence on his part." It was not necessary for the plaintiff to go further than this, and aver all the facts and circumstances tending to lead to the same conclusion, nor was it necessary for the court to instruct specifically upon unnecessary facts and circumstances averred.

The court, in a previous instruction, had set out the plaintiff's claim substantially in accordance with the averments above set forth. It also had set out the defendant's denial, and had instructed in these words: "Under this issue the burden is on the plaintiff to establish the following ultimate

<div style="margin-left-note">4. PLEADING: redundant averments: proof: instructions.</div>

facts: (1) That the injuries of which he complains were occasioned by the mismanagement or negligence of the servants or employes of the defendant; and (2) that he did not, by any negligence or want of care on his own part, contribute to the injury; (3) if he has established each one of these propositions by a fair preponderance of the evidence, he is entitled to recover; if he has not done this, you must find for the defendants." The court then proceeded to instruct the jury in an explanatory way, and gave the instruction first set out above as the one objected to. In this instruction the jury was not expressly told that it was necessary for them to be able to find that the plaintiff was rightfully where he was, nor that they should be able to find that the defendant had knowledge of the plaintiff's whereabouts. But the essential grounds, it appears to us, had already been covered; and, so far as the affirmative character of the explanatory instruction is concerned, the only proposition pointed out which it is claimed is erroneous, is that wherein the jury was instructed that they might consider whether the defendant "had any reasonable ground to believe that the plaintiff was in such position." It is said that there was not only no such issue, but that the issue was precluded by the averment that the defendant had actual knowledge.

In our opinion, if the instruction was erroneous by reason of the proposition in question, it was too favorable for the defendant. It was not necessary that the defendant should have reasonable ground to believe that the plaintiff, in particular, was engaged in unloading the car. It was sufficient if it had reasonable ground to believe that some one might be rightfully so engaged, and it was competent to show this under the allegations of negligence above set out; nor was the plaintiff precluded from proving these allegations because he had alleged, in addition, that the defendant had actual knowledge.

III. Another instruction is assailed on the ground that it contains a misstatement of an issue. The plaintiff averred

that "it became necessary for him to haul from the cars of the defendant certain lumber that had been transported to some person who sold the same on the defendant's track to the plaintiff's employer." The court stated to the jury that the plaintiff "alleges that in the course of his employment it became his duty to remove certain lumber which defendant had transported for his employer." It is said that there was a misstatement as to the party for whom it was alleged that the lumber had been transported. But the question as to whom the lumber was originally transported for was not an essential one. The plaintiff's employer had become entitled to it by purchase on the track. That was the essential fact. The variance between the plaintiff's allegation and the instruction appears to us to be wholly immaterial.

IV. The court gave an instruction in these words: "If the cars between which the plaintiff was injured, at the time he attempted to climb down between them, stood at some distance apart, and there was no reason to apprehend that they were about to be pushed together, the act of putting himself between them cannot be negligent." The defendant complains of this instruction, because the specific negligence insisted upon did not consist so much in putting himself in a general way between the cars, as in resting his foot where it was liable to be caught. The defendant contends that it is not necessarily negligence to put one's self between cars which are about to be pushed together, and the implication of the instruction is that it would be. But if this is so, then the instruction is too favorable for the defendant. Again, if the jury felt controlled by the implication, they must have found that the plaintiff had no reasonable ground to believe that the cars were about to be pushed together; and if he had not, he could not be said to be negligent in using the link as a' momentary foot-place in stepping to the ground. We do not see how an instruction could have been drawn upon this point that would have been satisfactory to the defendant, unless it were to the effect that it is negligence in dismounting from a

car to step upon a link projecting from the draw-head of a dead car near by, even as a momentary resting-place, and when there is no reasonable ground for believing that the car is to be disturbed, and where the character of the ground and other circumstances are such as to seem to make that mode of dismounting the safest. In our opinion the instruction given is not erroneous.

The views which we have expressed cover, we think, substantially the errors assigned and argued, and the judgment must be

AFFIRMED.