The judgment is therefore affirmed.

KIRBY, J., dissents.

---

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v.

STOVALL.

Opinion delivered March 27, 1911.

1.   RAILROADS—DUTY TO LICENSEE.—Where there was evidence tending to prove that defendant's trainmen saw plaintiff engaged in unloading a freight car, and negligently injured her by allowing another car to collide with such car with unusual force, a finding of negligence will be sustained.   (Page 428.)

2.   INSTRUCTIONS—GENERAL OBJECTION.—A general objection to an instruction is insufficient to point out an objection to the mere phraseology employed.   (Page 429.)

3.   DAMAGES—EXCESSIVENESS.—Where the physicians who examined plaintiff testified that her injuries were not permanent, and it does not appear that she suffered severe pain for any length of time, a verdict for $2,000 is excessive, and a reversal will be ordered unless a remittitur of $1,000 is entered.   (Page 429.)

Appeal from Desha Circuit Court; *Antonio B. Grace,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, E. A. Bolton* and *James H. Stevenson,* for appellant.

1.   The verdict is not sustained by *any* evidence, and is contrary to the evidence.   There was a total failure of proof to show that defendant's servants actually knew or were fairly chargeable with notice of plaintiff's presence in the car; further, the uncontradicted evidence shows that such was not the case. 93 Ark. 15.

2.   The court erred in its oral instructions.   93 Ark. 15; 90 Ark. 18.

3.   The verdict is excessive.   There were only a few bruises.

*Tellier & Webster,* for appellee.

1.   This case rests on a question of fact which the jury has settled, and there is ample evidence to sustain the verdict.   Even if she had warning, it was not negligence to remain in the car to protect her property, for she had no reason to expect a collision of unusual force.   93 Ark. 18.   This court will not disturb a verdict when there is any legal evidence to sustain it.   90 **Ark.** 103; 86 Ark. 608; 85 Ark. 195; 84 Ark. 78; 82 Ark. 375; 75 Ark. 111; 67 Ark. 537; 65 Ark. 125; 57 Ark. 577; 76 Ark. 327; 46 Ark. 524; 47 Ark. 196.   They are the sole judges of the weight and the credibility of the evidence.   73 Ark. 383.

2.   The speed of the switched car was negligence *per se.*   93 Ark. 18.

3.   Even if there was error in the court's charge in using the word "might," no specific objection was made.   65 Ark. 260; 66 Ark. 48.

4.   The verdict is not excessive.   Kirby's Digest, § 1904.

HART, J.   Appellant prosecutes this appeal to reverse a judgment for $2,000 rendered against it in favor of appellee for injuries sustained while unloading some household goods from one of appellant's freight cars.   According to the abstract of appellant, appellee testified as follows:

"I am the plaintiff in this case.   I was 36 years old the 4th day of February.   I am married.   I have four children.   We

arrived at Cominto Saturday night at 7 or 8 o'clock—something like that—and we could not unload the car until Monday. I don't know what time we started, but I suppose it was 10 or 11 o'clock. It was raining that morning, and we waited until the weather was suitable to move it, and that evening when I went down to see that the trunks and a few things were taken—the train didn't leave Wilmar until about 4:30, and there wasn't any show to unload that night—so we were down there, and it was about 5, I guess, in the afternoon—might have been a few minutes after 5. The mill stopped at 5 o'clock, and the mill hands were leaving the mill, and I was down at the car at that time, and this local came in, and I stood in the door, and so did the children, and looked at the engine. It was stopped down below us there. I don't know how far, as I didn't measure beforehand and wasn't able to afterwards, and so I, of course, looked at them; they saw me, and I saw them, and I went on about my business in the car, to get my things arranged so I could get them out, as I wanted them, and I heard the train pulling out, but I had no idea it was coming on the switch, and the first I knew I was thrown about six feet forward. When I saw it, the engine was off on the main line. I never saw it on the side track. If I had had any idea it was coming on the side track, I would not have been on it, and when they struck they threw me six feet forward. There was a heater there, a couple of sewing machines, a barrel of fruit jars, a heavy trunk and myself, all bundled up there together. The top of a heavy walnut dresser was thrown on me, and my head was struck here, and had a knot on it as big as your head and black as your shoes. When I got out of this car after the accident, went direct to Mrs. Lindsey's."

She also gave a detailed account of the character and extent of her injuries, a reference to which will be made later.

Rube Mays for appellee testified that he saw the flat cars when they struck the car in which appellee was at work unloading her goods. There was a little girl assisting appellee in her work. Witness warned her that there were cars coming down the side track, and told her that she had better get out of the car. He says he called to the little girl loud enough for appellee to hear him, but does not know whether appellee did hear him. Witness then went forward, and called to the brakeman on the

moving cars that there was a lady in the car he was approaching. The track was down grade, and the cars were moving pretty fast. The brakeman then tried to stop the cars and jumped off before the moving cars struck the one in which appellee was working.

Other evidence for appellee shows that the cars struck the one in which appellee was unloading her goods with unusual force.

The train crew state that they did not see appellee in the car unloading her goods on the day she was injured. The conductor stated that he remembered appellee coming in with him on Saturday preceding the injury, and that he "spotted" the car at her request in order that she might unload it. When he returned on Monday, he states that he never thought about that car at all; that, if he had thought of it at all, he would have thought it was unloaded; that he went down there after the accident, and it seemed as if they struck the car "a little hard."

The brakeman stated that the three cars were sent in on the side track by what is known as a drop switch; that he was on the middle car, and set the brake on it; that he could not set it very tight, but checked the cars a little; that the chain got down below, and the brake would not work well; that no one called to him that there was any one in the car; that he dropped the cars down in the usual way, and jumped off and opened the knuckle in order to make the coupling.

Counsel for appellant contend (to use their own language) that "there is absolutely no evidence, circumstantial or direct, tending to show either actual or imputable knowledge of the presence of plaintiff in the car up to the time when Mr. Mays says he shouted to the brakeman and warned him."

Appellee testifies that when the train came in and stopped, she looked at the train crew. She says: "They saw me, and I saw them."

It is a matter of common experience that two persons may look toward each other, and that one may see the other while the latter, from preoccupation of mind or other causes, may not see the former. It is equally true, however, that within certain limits of distance if one person looks at another he can tell whether or not that person sees him. Appellee does not state

what the distance was between her and the train crew. She states that she does not know, but she says they saw her. If close enough, she could tell whether or not they saw her, and the jury had a right to accept her testimony, and reject that of the train crew who testified that they did not see her.

While the brakeman testified that the drop switch was made in the usual manner and was accompanied by only the ordinary jolt or jar, it will be noted that the cars were moving down a steep grade, and the brake was out of fix, and the jury may have found from this and other evidence that the cars came together with unusual force. The question of fact which the jury was called upon to decide was whether, under the facts and circumstances adduced in evidence, the train crew knew of or should have anticipated the presence of some one at the car, and should have operated the cars with that end in view to avoid injury. *St. Louis, I. M. & S. Ry. Co.* v. *Clements,* 93 Ark. 18; *Watson* v. *Wabash, etc., Ry Co.,* 66 Iowa, 164, 23 N. W. 380; *Dooley* v. *Missouri, K. & T. Ry. Co.* (Tex. Civ. App.), 110 S. W. 135; *Missouri, K. & T. Ry. Co.* v. *Thomas* (Tex. Civ. App.), 107 S. W. 868; *Louisville & N. R. Co.* v. *Hurst* (Ky.) 116 S. W. 291; *Houston, etc., Ry. Co.* v. *Gerald* (Tex. Civ. App.) 128 S. W. 166; *Louisville & N. R. Co.* v. *Crow* (Ky.) 118 S. W. 366; *Hudgens* v. *St. Louis & S. F. R. Co.* (Mo. App.) 119 S. W. 523; *State* v. *Western Md. R. Co.,* 98 Md. 125, 1 Am. & Eng. Ann. Cas. 598, and case note.

Counsel for appellant insist that the court used the words "knew or might have known" in an instruction on this question, when it should have used the words "knew or ought to have known." Might is often used to suggest an omission or neglect, and in any view we think a specific objection should have been made to the use of the word. *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 260; *St. Louis, I. M. & S. Ry. Co.* v. *Pritchett,* 66 Ark. 46.

We now come to the excessiveness of the verdict. The physicians who examined plaintiff testify that she has received no permanent injuries. One of these had been her family physician. Other evidence shows that she soon recovered from her injuries. She walked away from the car on the day she was injured, and it does not appear that she suffered severe pain for

any length of time. Without recounting the evidence in detail, we deem it sufficient to say that we have given the testimony bearing on that point careful consideration, and have come to the conclusion that the verdict was excessive.

If within 15 days appellee will enter a remittitur of one thousand dollars, the judgment will be affirmed; otherwise, the judgment will be reversed, and the cause be remanded for a new trial.