WESTERN UNION TELEGRAPH COMPANY *v.* SOCKWELL.

Opinion delivered July 12, 1909.

1.  TELEGRAPH COMPANY—NEGLIGENCE—EVIDENCE.—In a suit against a telegraph company for negligence in failing to deliver a message where defendant proved that its messenger delivered the message to a boy in charge of the telephone switchboard at a hotel, it was not error to exclude testimony of the messenger that he was told by such boy that plaintiff was stopping at the hotel, in the absence of evidence that it was the duty of the boy to give information of the persons stopping at the hotel or to receive messages sent to them. (Page 482.)

2.  SAME—NEGLIGENCE IN FAILING TO DELIVER TELEGRAM.—EVIDENCE.—In a suit against a telegraph company to recover damages for mental anguish caused by nondelivery of a telegram announcing the illness of the addressee's father it was not error to permit the addressee to prove that his father had given him forty acres of land, and that he had not visited his father oftener because he was financially unable to do so, as such evidence tended to show the affection that existed between father and son. (Page 482.)

3.  SAME—NONDELIVERY OF TELEGRAM—NEGLIGENCE.—Where the name and address of the addressee of a telegram appeared in the city directory, the telegraph company could not excuse its negligence in failing to deliver the message to the addressee by proof that it followed its custom, where the address of a person was unknown to it, of inquiring at the various hotels in the city. (Page 482.)

4.  SAME—FAILURE TO GIVE ADDRESS.—Where a telegraph company failed to deliver a telegram when it had the correct address of the addressee in a city directory, it cannot complain because the sender was negligent in not giving a more definite address. (Page 482.)

5.  INSTRUCTIONS—ASSUMING UNDISPUTED FACT.—An instruction which assumed an undisputed fact was not erroneous. (Page 483.)

6.  TELEGRAPH COMPANIES—NONDELIVERY OF TELEGRAM—MENTAL ANGUISH.—Where the undisputed evidence showed that the relation between plaintiff and his father was of an affectionate nature, it was not prejudicial error, in a suit for nondelivery of a telegram announcing his father's illness, to assume that plaintiff suffered mental anguish in being deprived of the opportunity to be with his father in his last illness. (Page 483.)

7.  APPEAL—WAIVER OF OBJECTION.—Where appellant company failed to move for a new trial for insufficiency of the evidence to support the verdict, it will be held on appeal to have waived such objection. (Page 484.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

This is a suit by appellee against appellant for damages for mental anguish growing out of the alleged negligence of appellant in failing to deliver a telegram. The complaint contains, among other allegations, the following: Plaintiff says that his father, a man of advanced age, was prior to the 5th day of August, 1908, residing in Mountain Park, and that prior to said 5th day of August plaintiff alleges that his father had become sick and confined to his bed; that plaintiff was notified of such sickness, and was told that if any alarming symptoms occurred which would indicate the probable death of his said father a telegram would be sent to him at Fort Smith, Arkansas.

Plaintiff alleges that on the 5th day of August, 1908, his father grew rapidly worse, and that his brother, R. O. Sockwell, on said 5th day of August, at the time of 7 o'clock and forty minutes P. M., delivered to the Western Union Telegraph Company at Mountain Park for transmission for a valuable consideration the following telegram, towit: "Come at once. Father is very low."

Plaintiff alleges that said message was received at the office of the Western Union Telegraph Company at Fort Smith, Arkansas, at 8:15 P. M. on said 5th day of August, but that the said Western Union Telegraph Company did not deliver said message to this plaintiff until the 20th day of August, 1908, at 7:10 A. M., and that when the plaintiff learned of his father's sickness his said father had died and had been buried.

Plaintiff alleges that he was greatly devoted to his said father, and that his said father was greatly devoted to him (plaintiff), and that, had he received said message prior to his father's death, he would have promptly gone to his father's bedside and lingered with his father pending his dissolution; that by reason of the failure of the aforesaid defendant to deliver said message, and in consequence of the plaintiff's inability to be with his father prior to and at the time of his death, the plaintiff alleges that he has suffered great mental anguish and has been damaged in the sum of $2,000.

The answer denied all these allegations. The appellee testified as follows: "That he was born in 1886, and lived and worked with his father until his marriage 4 or 5 years since.

After his marriage his father gave him forty acres of land out of the home farm, and he lived on that until the fall of 1904. In April, 1905, he came to Fort Smith and entered the service of the street car company, with whom he has ever since remained, as motorman at first, and later as conductor. That he had visited his father at his home in Oklahoma some three hundred miles away once, and his father had visited him in Fort Smith in July preceding his death. That he did not visit his father more because of his being financially unable to do so. That the relations between his father and himself were those of affectionate father and son. That he was notified by letter a few days prior to August 5, 1908, of his father's illness, and at once wrote to him to advise him in case his father's condition became critical. That he heard nothing further from home until August 14, when he was informed by letter from his mother of the death and burial of his father. That he took the first train for Weatherford, Oklahoma, and visited his mother and the family. That he then learned that a telegram had been sent him, and was given a copy of it by the Western Union operator at Weatherford. On his return home, August 20, he went to the office of defendant in Fort Smith, and Manager Stannard delivered to him the message on which this suit is based."

Appellant objected to the testimony as to the financial condition of plaintiff and to the testimony as to the gift of the 40 acres. Objections overruled, and exceptions saved.

R. O. Sockwell: He was 25 years old, a brother of appellee, and resided with their father in Kiswa County, Oklahoma, on August 5, 1908. "To the best of his knowledge and belief," his brother, E. C. Sockwell, resided in Fort Smith "during the month prior to August 5, 1908." Prior to August 5 he notified his brother that their father was sick with typhoid fever, and that notice would be given him if he got worse. On August 5 his father became worse, and witness delivered to M. V. Holland, the rural mail carrier, the telegram described in the complaint, to be taken to appellant's agent at Mountain Park for transmission.

S. Cornet: Was the agent for defendant at Mountain Park, Oklahoma, on August 5, 1908, and on that date received from M. C. Holland the message in suit for transmission.

M. C. Holland: He conveyed the telegram from the sender, R. O. Sockwell, to defendant's agent at Mountain Park.

The appellant's witness, H. C. Stannard, testified as follows: Was manager for defendant at Fort Smith. Its office force at night consisted of one operator, one night clerk and one delivery boy. That these composed the office force on the night of August 5, 1908. That the message was delivered to the addressee on August 20, 1908. That there was a city directory in defendant's office in Fort Smith, much worn by use, which contained the name and address of plaintiff. Appellant asked the witness to state the proper or usual method of attempting to find an addressee, when no further address than the name of the town was given. Objected to. Counsel for appellant then stated that he proposed to show by the witness that he had been in the telegraph business as manager for thirty years; that when messages were received in a place as large as Fort Smith, with no more address than a name, and no one in the office knew such a person, the delivery boy would take the message to the principal hotels and inquire there for the addressee; that this was the general practice in trying to locate an unknown person. The court refused to permit the testimony, and appellant excepted.

Ira Lunsford: Was the operator who received the message and hung it upon the receiving hook. He had never heard of appellee.

Ray Greenlee: Was night clerk in appellant's office at Fort Smith on August 5, 1908, and received the message that night. He took it from the hook, copied it, registered it and gave it to the messenger boy, Logsden. He had never heard of appellee.

Eugene Logsden: Was appellant's delivery boy on night of August 5, 1908, and received the message between 8 and 9 that night. He had never heard of appellee. He took the message to the Hotel Main, the principal hotel in the city, and found a boy about 14 years old, named Hennessy, behind the clerk's desk. The message was delivered to Hennessy, and he receipted for it. Hennessy was in charge of the hotel 'phone switchboard, and had been in the habit of receiving and receipting for messages addressed to the hotel or to persons stopping there. That he had so received such messages in the presence of and with the knowledge of the clerk.

Counsel for appellant asked witness what Hennessy said to him, but appellee objected. Counsel for appellant stated that he expected to show by this witness that Hennessy told the messenger that Sockwell was stopping at Hotel Main.

The court refused to permit this testimony to be given, and appellant excepted.

The court over appellant's objection gave the following instructions:

"1. All telegraph companies doing business in this State shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury or pecuniary loss, for negligence in receiving, transmitting or delivering messages, and in all actions under this section the jury may award such damages as they conclude resulted from the negligence of said telegraph company. Therefore, if you find from a preponderance of the evidence in this case that plaintiff's brother, R. O. Sockwell, delivered to the defendant telegraph company, on the 5th day of August, 1908, the following telegram in substance: "Come at once. Father is very low," that said telegram was addressed to the plaintiff at Fort Smith, Arkansas, that said message was received at the office of the Western Union Telegraph Company at Fort Smith, Arkansas, at 8 P. M. on the said 5th day of August, and that said telegraph company did not deliver said message to the plaintiff until about the 20th day of August, 1908, and that said plaintiff had a known residence in the city of Fort Smith on the day and date set out in this complaint, and that in the meantime his father had died and had been buried, and that, on account of the delay in delivering the said message, plaintiff was precluded from being with his father in his last illness and at his death, and that said failure to deliver was on account of negligence of defendant's agents and employees, you will find for the plaintiff in whatever sum you should believe to be a compensation to him for the mental anguish occasioned to him by his inability to be with his father during his last illness and death.

"2. Whether sending the message to the plaintiff without giving any further address than the city and State was such negligence on the part of the sender of the telegram as to excuse the defendant for failure to deliver is a question of fact for the jury.

"3. It is also a question of fact for the jury to determine whether the accepting and undertaking to deliver the message without any further address than that given and failure to deliver same promptly was negligence on the part of the defendant under all the evidence in the case."

The court, over the objections of appellant, refused prayers numbered 1, 2, 3, and 4, which in effect told the jury that it was the duty of the sender of a telegram to give such an address as would enable the telegraph company to deliver the same by the exercise of ordinary care, and that in a city of 25,000 or more population a message which gave nothing more than the name of the addressee, unless he was so generally known that he could be found by the exercise of ordinary diligence, would not be a sufficient address; and that if the jury found from the facts to exist, and that the failure of appellant to deliver the telegram promptly was because of the want of *such correct* address, they should find for the defendant.

Also prayers numbered five and six as follows:

"No. 5. If you find that plaintiff was unknown to the employees of defendant at the office when the message was received, and that the delivery boy took the message at once to the Hotel Main, the principal hotel in said city, where he was told by one of the hotel employees that plaintiff was stopping there; that he thereupon delivered the message to said employee, and that said employee was one who habitually received and receipted for messages left at the hotel, then you will find for defendant.

'No. 6. If you find that none of the employees in defendant's office when the message was received knew plaintiff; that the delivery clerk took it directly to the Hotel Main, which was the principal hotel of the city; that Fort Smith has a population of 25,000 or more; that the delivery clerk delivered said message to an employee of the hotel, who was in the habit of receiving messages directed to persons in care of said hotel or stopping there, who receipted for the same; and if you further find that it is the common and usual practice of delivery clerks, when they have a message for an unknown party, to inquire at the hotels, then defendant was not negligent in making such delivery; and if you further find that defendant did not learn until long after

the death of plaintiff's father that said message had not been received by the addressee, then you will find for defendant."

There was a verdict in favor of appellee for $800.

The motion for a new trial alleged the following errors:

In excluding the evidence of the messenger that he was told by the party in charge of the office at Hotel Main that the addressee was stopping there; in permitting evidence of appellee's financial condition; in refusing to allow Stannard to testify as to usual method of finding addressee when meassage did not contain specific address; in refusing each of appellant's six requests for instructions; in giving each of the three instructions.

The motion was overruled. Judgment was entered in accordance with the verdict, and this appeal was taken.

*George H. Fearons, Mechem & Mechem* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The burden of proof was on the plaintiff to show that the delay caused damage to him. It does not show that he was in Fort Smith when the message reached there, nor when his father died, nor that he would or could have reached him before his death, had the message been promptly delivered. 87 Ark. 307; 27 Am. & Eng. Enc. of Law, 1076.

2. The admission of evidence that plaintiff's father had given him 40 acres of land, and that he did not visit his father more frequently on account of his financial condition, was erroneus, the manifest object of introducing it being to create an impression in the minds of the jury of his poverty.

3. Stannard's testimony offered by appellant was competent as tending to show that the failure to deliver promptly was caused, in part at least, by the sender's negligence in not giving a sufficient address. 82 Ark. 127; 116 S. W. 895; 60 S. W. 87; 62 S. W. 136; 74 S. W. 943; 76 S. W. 613; 3 So. 566. It was competent also on the question of damages.

*Oscar L. Miles,* for appellee.

The case should be affirmed. A casual reading of the pleadings and evidence will show that every issue raised by the pleadings was fully established by the evidence, and the court's instructions merely epitomize the law announced by this court in similar cases. 78 Ark. 551; 82 Ark. 527.

WOOD, J., (after stating the facts.)   We will consider the questions in the order presented in the motion for new trial.

1.   It was not error to exclude the offered testimony of the messenger boy that he was told by Hennessy that Sockwell was stopping at the Hotel Main.   It was not shown that it was the duty of the boy in charge of the "hotel 'phone switch-board" to give information of the persons stopping at the hotel.   Even had it been shown that appellee was at the hotel, the offered evidence did not tend to prove that it was the duty of the 'phone boy to receive messages sent to the patrons of the hotel, or to give any information concerning them.   The offered testimony was pure hearsay.

2.   The testimony of appellee that his father had given him forty acres of land, and that he had not visited his father more because he was financially unable to do so, was not prejudicial error.   The connection in which this evidence was elicited shows that its purpose was not to show appellee's poverty or financial condition, as appellant contends, but to show the state of feeling, the affection, that existed between father and son.

3.   There was no error in refusing to allow the witness Stannard to testify as to the proper or usual method of attempting to find an addressee when no further address was given than the name and town.   This witness testified "that there was a city directory in appellant's office in Fort Smith, much worn by use, which contained the name and address of plaintiff."   It could not be said, in view of this evidence, that the name and address of appellee were unknown to appellant.   It shows that his name and address were at hand in the directory.   But, instead of consulting this, appellant proposed to show what was the usual custom, and that it followed that custom.   In view of the above evidence, no matter if there was such a custom as appellant offered to prove, it was palpable negligence on the part of appellant to follow the custom, instead of taking the positive information in its possession. Any evidence which tended to show that appellant failed to consult and follow this certain information, but instead resorted to some other method less definite, would necessarily show negligence on the part of appellant.

4.   In view of the fact that appellant showed that it had the name and address of appellee at the time the message to

him was received at Fort Smith, it was not-error for the court to refuse the prayers of appellant to have the question submitted to the jury as to whether the sender of the telegram had given *such correct* address as would enable appellant by the exercise of ordinary care to deliver the message. It follows that prayers of appellant numbered 1, 2, 3 and 4 on the subject of the negligence of the sender and prayers numbered 5 and 6 on the subject of the custom of delivering telegrams were properly refused. It follows also that prayers numbered 2 and 3 given at appellee's request were more favorable to appellant than was warranted by the undisputed evidence. Appellant can not therefore complain of these. Appellant having the name and the correct address of the addressee of the message, as its own evidence shows, was in no position to claim that appellee was negligent in not giving a more definite address. Appellant failed to exercise ordinary care to ascertain where the addressee could be found, which it might have easily done by consulting the city directory in its hands.

5. Appellant contends that the first instruction given at the instance of appellee is erroneous in 'assuming that plaintiff had a known residence at Fort Smith at the time of this occurrence." The instructions left to the jury to determine from a preponderance of the evidence as to whether or not appellee had a known residence in the city of Fort Smith, which was really more favorable to appellant than it had the right to ask on this question, for the undisputed evidence of appellee is that in April, 1905, "he came to Fort Smith and entered the service of the street car company, with whom he has ever since remained."

Appellant also contends that the instructions assume that appellee had suffered some mental anguish on account of his inability to be with his father, when that was a question for the jury. The evidence was that the relations between appellee and his father "were those of affectionate father and son." It was not prejudicial error to assume that an affectionate son would suffer mental anguish by being deprived of the opportunity of being with his father in his last illness.

The contention here that there was no evidence to show when appellee's father died, and therefore no evidence to show

that appellee would or could have reached him before his death had the message been promptly delivered, is borne out by the record. But one of the grounds for which a verdict may be vacated and a new trial granted is as follows: "The verdict is not sustained by sufficient evidence." Sec. 6215, Kirby's Digest, subdiv. "sixth." The motion for new trial contains no such ground. Had the attention of the trial court been called specifically to this in the motion for new trial, we would then be in position to say that the court had erred in overruling the motion. But on review here we reverse only for errors in the rulings of the lower court. Therefore it must be held that the failure of the appellant in its motion for a new trial to object to the sufficiency of the evidence to support the verdict was a waiver of such ground there and here. The trial court was not given the opportunity to set aside the verdict on the ground that there was no evidence to sustain it. Moving for new trial waives all exceptions taken at the trial and not incorporated in the motion. 1 Crawford's Digest, "Appeal and Errors," p. 122, IVb, where the cases are collated. Therefore appellant cannot succeed upon his contention, raised here for the first time, that the evidence does not sustain the verdict.

Finding no reversible error, the judgment is affirmed.

ON REHEARING.

Opinion delivered October 18, 1909.

Wood, J., (dissenting). Appellee's mental anguish, according to the allegations of his complaint, grew out of his "inability to be with his father prior to and at the time of his death." There is no evidence to show when appellee's father died. There is no evidence to warrant the finding that if the telegram had been delivered promptly to appellee he could have reached his father's bedside prior to his death. In the absence of this evidence, appellee fails to prove the cause of action alleged.

While the motion for new trial does not assign as error that there was no evidence to support the verdict, the objection to the first instruction and the exception to the ruling of the court in giving it, carried forward into the motion for new trial, raises the question here. For it was error to submit to the jury the question as to whether or not "on account of the delay in delivering the

said message plaintiff was precluded from being with his father in his last illness and at his death," when there was no evidence to show that appellee could have reached his father's bedside before his death, had the message been promptly delivered. Instructions must be based upon the evidence. It is prejudicial to submit abstract questions that are material to the issue.

I have reached the conclusion on reconsideration that the above is the correct view to take of the case, and that the same should be reversed for the error in giving instruction number one. *St. Louis S. W. Ry. Co.* v. *Jackson, ante* p. 14, and authorities there cited.

BATTLE, J. I concur.