## WESTERN UNION TELEGRAPH COMPANY *v.* WILSON.

### Opinion delivered January 2, 1911.

1. TELEGRAPHS AND TELEPHONES—NEGLIGENCE—QUESTION FOR JURY.—It is a question for the jury to determine whether in a particular instance the agents of a telegraph company, intrusted with the duty of delivering messages, exercised the diligence that a reasonably prudent person would, under like circumstances, have exercised in the performance of a similar duty. (Page 204.)

2. SAME—INSTRUCTION AS TO NEGLIGENCE—OBJECTION.—To charge that it is the duty of the telegraph company to use reasonable effort for the prompt delivery of a message, instead of saying that it is its duty to make such effort as a man of ordinary prudence would use under similar circumstances, is a mere inaccuracy of language, which should be reached by specific objection. (Page 205.)

3. SAME—MENTAL ANGUISH—INSTRUCTION.—It is not error to assume in an instruction that a mother would suffer mental anguish if deprived of the privilege of attending her son's funeral. (Page 206.)

4. SAME—INSTRUCTION.—In an action for the nondelivery of a telegram which would have apprised the addressee of the death of her son, it was not error to refuse an instruction that the plaintiff could not recover unless she proved that if plaintiff had received the message she would have directed her son's body to be brought to the family burial ground, where it was shown that decedent's father and sister were buried there, and none of the family were buried elsewhere. (Page 206.)

5. SAME—CONTRIBUTORY NEGLIGENCE—PLEADING.—It was not error to refuse to instruct the jury upon the issue of the plaintiff's contributory negligence if no such defense was pleaded. (Page 206.)

Appeal from Ouachita Circuit Court; *George W. Hays,* Judge; affirmed.

STATEMENT BY THE COURT.

Saturday, December 5, 1908, at about 5:20 P. M., R. L. Hopkins delivered to the agent of appellant at Longview, Texas, for transmission the following message:
"To Mr. Sylvester Hufstedler,
        "Camden, Ark.
    "Henry died here today.  Find out whether mother wants him brought to Malvern or not."

"Henry" was the brother of the sender of the message, and appellee was their mother.  The message was received by the agent of appellant at Camden Saturday, December 5, 1908, at 5:52 P. M.  The message was given to the messenger boy at 5:55 P. M. that day.  He did not know Hufstedler, or where he lived, looked in the only directory in town, went to the post-office, found it closed, and inquired of the only man he found there.  He asked Mr. Terrel and Mr. Earl, at Terrell & Goodgame's, asked at Stearn's meat market, at Gee's grocery store and McDonald's saloon; made inquiries at most of the stores on the street from 6 until 7:30 P. M.  He went to nearly all the business houses in the city.  He went to the Hotel Ouachita, the Brooks Hotel and the Riverside Hotel.  These were about all the places he could remember.  He did not inquire of any of the preachers, teachers or policemen.  Terrell & Goodgame's and McDonald's saloons are about a quarter, or a little over, of a block from the telegraph office.  Gee's grocery store is about the same distance from appellee's office.  He did not inquire at Proctor's or McDonald's furniture store, nor at Reeve's grocery store.  He did not go to Rumph & Tyson's and Carson's stores, nor to the Newton Hotel.  These were further down.  He did not remember whether he inquired at Lide & Brother's or Stark's grocery store, Jackson's, Proctor's, McRae's.  Near the Iron Mountain depot McRae had a warehouse, and Wood had a grocery store.  He did not go over there to inquire, nor did he ask either of the depot agents that night.  Those he mentioned were the only ones he could remember that he made inquiry of as to where he might find the sendee of the message.  The mes-

senger boy was 14 years of age; he had lived in Camden all his life, and had been in the service as messenger boy four months. The messenger boy made inquiry for about an hour after he received the message, and then returned to the telegraph office, went out the next morning to the hotels and made inquiry of several people that day, but could not tell who they were. The agent receiving the message testified that when he returned from supper to the office the messenger reported that he was unable to find the party; then the agent inquired around town himself. He asked the clerk at the postoffice, the clerk at Terrell & Goodgame's saloon and several others he did not remember; made several inquiries, but could not find out anything about Hufstedler. The agent went out to make inquiry himself because the boy reported at 7 o'clock that he was unable to find Hufstedler, and the message was important. The agent was well acquainted in Camden, but did not know Hufstedler, had never heard of him and could not find anybody that afternoon or night that knew him.

An employee of the Southwestern Telephone Company testified that he had a call for Sylvester Hufstedler on Sunday, December 6, and that he tried to find him, but was unable to do so, and had to call up Longview, Texas, to find out his specific address. He stated that the telephone operator asked some people around town, but could not locate Hufstedler from them. Hufstedler's name was not in the telephone directory, nor was it in any directory.

Hufstedler lived about seven or eight blocks from the telegraph office and about three and a half blocks from the Iron Mountain depot. He had a family, and was keeping house. He lived in South Camden, and there were several residences on the same street he lived on. It was as thickly settled as the north or east part of town. He had resided in Camden at that time about four months. He was section foreman of the Iron Mountain Railway Company, and a large part of the section where he worked was within the limits of the town. His work required him to be away from home in the day, but he was usually home at nights and on Sundays. Hufstedler had two children, aged respectively 9 and 14 years, in the high school. The larger part of his groceries he purchased from the store

of Reeves & Son, located in the city of Camden, diagonally across the street from the telegraph office, not further than 200 yards. In this store five men were employed, each of whom knew Hufstedler, and where he lived, and the proprietors of the store were the kinsmen of the telegraph messenger boy.

Hufstedler testified as follows: "December 5, 1908, I knew all the people that worked in Reeve's store. I knew Mr. Wood, who had a grocery store in South Camden, and also Mr. Jack Thornton. I believe I knew some one in Levy's drug store. I got my mail at the free delivery at the postoffice. I knew the man's name who waited at the window, Mr. Lockhart; he knew my name and would give me my mail without my calling any name when I would go to the window. I belonged to the lodge, A. O. U. W., and prior to December 5, 1908, had attended the meeting of the lodge where there were fifteen or twenty members there. I was introduced to all of the strangers that came into the lodge. When I came to town, I boarded for two weeks here; I was in town every night. I do not know whether I was acquainted with all the preachers in town or not; I knew Brother Treadway, the Baptist preacher, and Brother Watson, the Methodist preacher. There were three men employed in the Iron Mountain depot. Alonzo Whyte was the yard clerk. I do not think I can call over any more people I knew in Camden prior to December 5, 1908."

A policeman testified that he knew Hufstedler; that the witness generally went home about 10 o'clock at night; that his business was on the streets going from one place to another, sometimes in the residence portion of the town. He knew the vicinity in which Hufstedler resided, and could have directed anybody to his home. Neighbors living close to Hufstedler testified to knowing him, and one of them said he was down town Saturday night, December 5, and if any one had asked him about Hufstedler he could have told where he lived. Camden was a city at that time of about 5,000 inhabitants. The message was delivered at the residence of Hufstedler Monday morning.

R. L. Hopkins, the sender of the message, would have brought the body of his brother to Malvern for burial had he received a reply to his message, and appellee would have attended the funeral of her son at Malvern if he had been buried there.

The appellee brought this suit, alleging that appellant was negligent in failing to deliver the telegram, and that R. L. Hopkins, failing to receive a reply to his message, had the body of the plaintiff's son, Henry, buried at Longview, Texas, on the 6th of December, 1908, without the knowledge of the plaintiff and contrary to her wishes. That if the message had been delivered to the addressee immediate directions would have been telegraphed to bring the body of her son to Malvern, Arkansas, for interment, and that she would have attended the funeral. That, because of the negligence of appellant company in the failure to transmit and deliver the message, she was deprived of the privilege and opportunity of viewing the remains of her son and attending his funeral.

The appellant answered, and denied all the material allegations. The court, at the request of appellee, granted the following prayers:

"1. The jury are instructed that upon receipt of the message it became and was the duty of the defendant to use reasonable effort for the prompt delivery of the same; and if you believe from a preponderance of the evidence that it failed to use such effort, then and in that event you are told that it was guilty of negligence. As to whether under the facts and circumstances detailed in evidence by the witnesses the defendant company was negligent in the delivery of this message is a question to be determined by you from all the evidence in the case.

"2. If you find from the preponderance of the evidence that the defendant company was negligent in delivering the telegram, then you will find for the plaintiff in whatever amount you consider a reasonable compensation for the mental anguish and suffering sustained by her by reason of said negligence.

"3. You are instructed that the contents of the telegram is of itself sufficient to charge the defendant company with notice of damages which might result from negligence in delivering the same."

General objections were made to the giving of these prayers, which the court overruled, and to the ruling appellant duly excepted.

The appellant prayed for instructions telling the jury that

if R. L. Hopkins was guilty of contributory negligence in not giving a more specific address for the sendee they should find for appellant. Appellant also asked the following:

"3. The jury are instructed that, before the plaintiff can recover in this case, it must be proved by a preponderance of the testimony that by the use of ordinary care the telegram sent from Longview to Camden, about which complaint is made, would have been delivered to Hufstedler, and that he would have gotten in communication with his mother-in-law, the plaintiff, and that the said plaintiff would have communicated her desire to her son at Longview, Texas, before the son had decided that he would not carry the body to Malvern, Arkansas, and that she would have directed him to send the body to Malvern, Arkansas, and that plaintiff would have met said body at Malvern, Arkansas, and attended the funeral; and you are further instructed that, if you find all these facts to be proved by a preponderance of the evidence, still the plaintiff is not entitled to recover unless the jury should find from a preponderance of the evidence that the plaintiff suffered mental anguish on account of not attending the funeral of the deceased at Malvern, Arkansas, separate and distinct from the mental anguish she suffered on account of the death of the deceased."

"7. The jury are instructed that if they believe from the evidence that R. L. Hopkins could have carried the body of Henry Hopkins to Malvern for burial, notwithstanding the failure of the defendant to have delivered the telegram, and that he could have, through Hufstedler at Camden, notified the plaintiff of his intention in time so she could have reached Malvern in time to have attended the funeral, while the body was in condition to have been kept out of the grave, then your verdict must be for the defendant."

Appellant duly excepted to the ruling of the court in refusing the above requests for instructions. The verdict and judgment were for $250. Other facts stated in the opinion.

*George H. Fearons, Gaughan & Sifford* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Defendant was only bound to use ordinary care and diligence to deliver the message. 53 Ark. 434. Reasonable diligence

was abundantly shown. The first instruction given at appellee's request is wrong. The test is reasonable effort on the part of an ordinarily prudent person, under the circumstances, to deliver the message. 63 S. W. 171.

2. The second instruction requested is erroneous, because it assumes that appellee suffered mental anguish, etc. 89 Ark. 540.

3. The third instruction given was objectionable because of its unusual brevity. The third instruction requested by appellant should have been given. Contributory - negligence of Hopkins should bar recovery, and it was error to refuse instructions requested on that question. 60 S. W. 687.

*Powell & Taylor,* for appellee.

1. The evidence fails to show due diligence on the part of appellant. The question whether or not appellant was negligent was for the jury to decide under proper instruction of the court, which was given. 91 Ark. 602. At least ordinary and reasonable effort must be made to deliver a message. 128 S. W. 1051.

2. The second instruction is not subject to the criticism that it assumes that plaintiff suffered mental anguish. 91 Ark. 475.

3. The third instruction has been approved by this court in the Reeves case, 128 S. W. 1051, and is a clear, succinct statement of the law.

4. Instructions 5, 6, 7 and 10, requested by appellant, were properly refused because the contributory negligence of Hopkins and Hufstedler was neither pleaded nor proved. 72 Ark. 23; 85 S. W. 225.

WOOD, J., (after stating the facts). 1. It was for the jury, under the evidence, to determine whether the agents of appellant, intrusted with the duty of delivering messages, exercised the diligence that a reasonably prudent person would, under like circumstances, have exercised in the performance of a similar duty.

We are not able to say as a matter of law, from the peculiar facts of this record, that the agent and messenger boy exercised such care to deliver the message as a reasonably prudent person would have exercised under similar circumstances. Camden is not a very populous city. The messenger boy only made

a search of a little more than one hour's duration, and the circle of his inquiry was not very extensive or comprehensive. He testified in general terms "that he tried as hard as he could," that "he made inquiry of all the people he knew," and that "he went in 'most all the business houses" and "asked all around town for him." But he could only name seven places where he made inquiry, and he could recall the names of only two persons of whom he made inquiry. The general delivery clerk at the post-office knew Hufstedler and his family. Hufstedler called there and received his mail. The messenger boy did not inquire of him. He made no inquiry of some business houses within 200 yards of the telegraph office. One of these was a grocery store where Hufstedler bought his groceries, and at least five people there knew Hufstedler. He made no inquiry of the depot agents close at hand, of teachers who might know the children of Hufstedler in the public schools; of preachers who might know Hufstedler if he attended any of the churches on Sunday, which he did; of the policemen, one of whom at least knew him. The agent himself made inquiry for a much shorter time, and of still fewer people. The agent of the telephone company had a call for Hufstedler on Sunday, December 6, and "tried to find him, but was unable to do so. He asked some people around town, but could not locate Hufstedler from them." He does not, however, tell how many he inquired of, or whom he asked. The jury might have concluded that a person of ordinary prudence, under the circumstances, would have made a more diligent inquiry, and that appellant's servants were negligent in not doing so. It was peculiarly a jury question, and was submitted on the first instruction given at the request of appellee.

2. By this first instruction the court evidently intended to tell the jury that it was the duty of the appellant to make such effort as a man of ordinary prudence would use under similar circumstances. The language "reasonable effort" as used in the instruction was a mere inaccuracy of verbiage, which could and should have been corrected by specific objection. *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255; *St. Louis, I. M. & S. Ry. Co.* v. *Pritchett,* 66 Ark. 46; *Williams* v. *State,* 66 Ark. 264; *Trulock* v. *State,* 70 Ark. 568; *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140; *Ark. Mid. Rd Co.* v. *Rambo,* 90 Ark. 108; *St. Louis,*

*I. M. & S. Ry. Co.* v. *Carter,* 93 Ark. 589; *El Dorado Ice & Planing Mill Co.* v. *Kinard,* 96 Ark. 184.

There was no error in giving instructions 2 and 3 at the request of appellee. It is not improper to assume as matter of law that a mother would have mental anguish if deprived, through the negligence of another, of the mournful privilege of attending the funeral of her son. She would be a most unnatural mother, were it otherwise. *Western Union Tel. Co.* v. *Sockwell,* 91 Ark. 475.

Instruction number 3, though brief, was correct.

It was shown by the undisputed evidence that Hufstedler knew that it was the wish of appellee that her son be interred in the family burial grounds near Malvern. The father of the deceased and one sister were buried there, and none of the family was buried elsewhere. It was not error to refuse the third prayer of appellant.

Contributory negligence was not set up in the answer, nor was there any evidence to warrant the submisison of any such question to the jury. The court therefore did not err in refusing appellant's prayers numbered 5, 6, 7 and 10.

The judgment is correct. Affirm.