VAN VENEER COMPANY v. JONES.

Opinion delivered April 23, 1917.

1. MASTER AND SERVANT—DANGERS—DUTY TO WARN.—Where there is a duty to warn a servant, it would be a breach of such duty to expose him to such dangers without giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the dangers and the necessity for the exercise of due care and precaution.

2. MASTER AND SERVANT—INJURY TO SERVANT—PROPER MACHINERY.— It is the duty of a master to use ordinary care to install in his mill machinery that is reasonably safe.

3. APPEAL AND ERROR—HARMLESS ERROR.—A cause will be reversed for error only when the same is prejudicial.

4. APPEAL AND ERROR—OBJECTION TO INSTRUCTION—DUTY TO ASK CORRECT INSTRUCTION.—In a personal injury action the court gave an instruction at plaintiff's request to which defendant objected. Held, when defendant objected to the form of the instruction it was his duty to do so specifically.

Appeal from Hot Spring Circuit Court; W. H. Evans, Judge; affirmed.

John H. Crawford and Dwight H. Crawford, for appellant.

1. The court erred in refusing to give the peremptory instruction for defendant. The evidence is not legally sufficient to sustain the verdict. Improper testimony was admitted. 1 Wigmore's Greenleaf on Ev. (16 ed.), 527, § 430 h and i; 84 Kans. 224; 23 L. R. A. (N. S.) 414.

2. A youthful servant who understands and appreciates the dangers of his employment, assumes the risk of injury therefrom, especially open and patent dangers as here. 39 Ark. 17; 73 Id. 49, 55; 93 Id. 153; 56 Id. 206, 232, 238; 104 Id. 489; 6 Ind. App. 677; 55 Fed. 903, 946; 39 Minn. 78; 105 N. Y. 39; 21 N. E. 717; 34 Id. 1059; 35 Id. 648; 23 N. W. 624; 100 Mich. 276; 149 Id. 114; 163 Mass. 391; 146 Id. 182; 148 Id. 228; 160 Id. 566; 97 Ark. 486; 118 Id. 304.

3. It was not necessary to provide the best or the safest machines obtainable, provided those furnished were reasonably safe and equipped with such safety ap-

pliances as machines of the kind are usually equipped with and especially where the dangers are open and obvious. Only ordinary care to provide reasonably safe appliances is required. The court erred in its instructions to the jury. 105 N. Y. 39, 12 N. E. 286; 21 *Id.* 284; Thompson on Negl., vol. 4 (2 ed.), § 4709; 97 Ark. 180.

*Callaway & Huie,* for appellee.

1. Plaintiff did not appreciate the danger. The case was properly submitted to a jury. It was the duty of defendant to warn plaintiff of the dangers. 115 Ark. 380, 384; 90 *Id.* 473; 53 *Id.* 117.

2. There is no error in instruction 1, but no specific objections were made, nor exceptions saved. 93 Ark. 589; 98 *Id.* 227; 98 *Id.* 352; 76 *Id.* 348; 93 *Id.* 521; 96 *Id.* 184. But appellant asked and the court gave No. 10 on the point.

3. There was no error in giving for appellee No. 5½. 97 Ark. 180, 187; 73 *Id.* 530; 65 *Id.* 259; 93 *Id.* 589; 117 *Id.* 524.

HART, J. Bryan Jones, a minor, by Mrs. Dora Jones, as next friend, sued the Van Veneer Company to recover damages sustained by him while in the employment of the defendant, alleged to have been caused by its negligence. There was a trial before a jury which resulted in a verdict and judgment for the plaintiff in the sum of $500. The defendant has appealed.

The principal assignment of error relied upon by counsel for the defendant to reverse the judgment is that the evidence is not legally sufficient to warrant the verdict.

Bryan Jones testified in his own behalf substantially as follows: In January, 1915, while in the employ of the Van Veneer Company at Malvern, Arkansas, I was injured, having the forefinger of my right hand cut off by a clipper or jointer, a heavy machine used in veneer mills to cut the veneering into given widths. At that time I was eighteen years and two months old. I had worked around the plant for about eight months at the time the

injury to my hand occurred. At the time I was injured, I was working at the clipper where I had been placed by the defendant's foreman, and had been working for two or three weeks. The clipper is a large machine with a heavy knife ninety inches long used for cutting veneering. It was my duty to stand at the side of the clipper and control the stroke of the knife and the width of the strips of veneering to be cut by throwing the machine in and out of gear by means of a lever. The clipper would run automatically, if so set. It was the custom for the person operating the clipper to go around in front of the machine to help take out the veneering as it was cut by the knife and pushed on the table. There was a man there to do that work, but the clipper man often helped him, and the foreman knew it. The clipper sometimes became choked or clogged by reason of splinters and small pieces of stock catching in a groove or throat in which the big knife of the clipper worked. When this happened it was my duty to free it by removing the obstruction, and I always did this without stopping the knife. It often choked up when narrow strips were being put through it. At the time I was hurt, the machinery was working on automatic feed. We were cutting narrow strips about one inch wide. I was helping the off-bearer remove the strips from the table when the machine choked up and I attempted to release it by removing the obstruction as usually done. The machinery was still running and caught my finger and cut it. My finger was bent at the time and was cut into two pieces. It had to be amputated and I suffered considerably. It was ten or twelve weeks before it was entirely well. I had never been told to stop the machine to take the obstruction out when it became choked up. I had never been instructed about how to operate the machine or to remove the obstructions, and had never been cautioned or warned by the foreman or any one else. I had never seen or worked at a machine like it before. The witness was asked if he could see the knife, and if he did not know it would cut. He replied, "Yes, of course, I

knew it would cut.  I knew it would cut off my finger if it
got caught in there.  Anybody would know that, but I did
not think about that.''

On cross-examination, the witness admitted that the
machine was in a well-lighted place, and that he could
see the knife, and it worked up and down cutting veneer-
ing.  He admitted that he knew that it would cut his hand
if it should be caught, and that on the same day the top
of the finger of his glove had been cut off by the knife.
He stated that the foreman had seen him remove the ob-
structions without stopping the machine, and knew it was
the custom for the obstructions to be removed in that way.

Other witnesses for the plaintiff testified that it was
the custom in that mill for the operator of the clipper ma-
chine to help the off-bearer remove the veneering.

Another witness testified that he had had about thirty
years' experience as a millwright and machinist, and was
familiar with veneering mills and with the machinery
used in such mills, called a clipper; that he knew and had
examined the machine in which Bryan Jones was injured;
that he had never seen but one other such machine, and
that it was fitted up with a guard and wooden filler to pre-
vent the operator from getting hurt.  He said he thought
the machine in question could be fitted with a wooden
filler of some hardwood to fill up the groove to prevent
the veneering from being caught in the groove; that this
would make a smooth surface for the veneer to pass over
instead of the groove in which it would sometimes catch.
He also stated that the machine could be fitted with a
guard which would keep any one from being cut, and that
this could be done at a small expense.

On the other hand it was shown by witnesses for the
defendant that the plaintiff had been warned about re-
moving the obstructions while the machine was in mo-
tion, and that it was not practical to operate the machine
with a guard and by filling up the groove with hard wood.
The witnesses explained in detail and gave their reasons
therefor.  They were men of many years' practical ex-

perience in machinery of this kind, but we need not set out their testimony; for the legal sufficiency of the evidence to support the verdict must be tested in the light most favorable to the plaintiff.

It is strongly insisted by counsel for the defendant that the danger was known by Bryan Jones, and that he fully appreciated and understood the dangers to be apprehended in removing the obstructions while the machine was in motion. They insist that he had acquired the information by practical experience, which is the best teacher, and that he knew therefore all that the instructions or warning of the defendant would have imparted to him.

(1)   Plaintiff admits that he knew the knife would cut his finger if it got caught in removing the obstructions, but said that he did not think about his finger getting caught. He stated that it was the custom of the operator of the machinery to remove the obstructions as he was doing when hurt, without stopping the machine. Knowledge of the danger was a question of fact. Bryan Jones was only eighteen years of age, and had never worked at a machine like this before. It is true he had worked around the mill for eight months, but he says that he had not worked around this machine and did not appreciate the dangers from removing the obstructions without stopping the machine. He said that it was the custom to do it that way, and that the foreman knew of this fact, and that no warning had been given him by the foreman or any one else. It is conceded that in all cases where there is a duty to warn a servant, it would be a breach of such duty to expose him to such dangers without giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to cause him to appreciate the dangers and the necessity for the exercise of due care and precaution. So under all the circumstances we do not think the court erred in not taking the case away from the jury.

Again, it is insisted that the court erred in giving instruction No. 5½. The instruction reads as follows:

"If you believe from the evidence that there were other standard veneer machines which would be reasonably safe, and if you find that the machine used was not reasonably safe, then you are instructed that it was the duty of the defendant to have installed a reasonably safe machine or to have so altered and equipped the one used as to have made it reasonably safe."

(2-3)   The instruction in the precise language given was erroneous and was so held in the case of *Holmes* v. *Bluff City Lumber Co.*, 97 Ark. 180. The court should have told the jury in the instruction that it was the duty of the defendant to have used ordinary care to have installed a reasonably safe machine, etc. It does not follow, however, that because the court held such an instruction to be erroneous in *Holmes* v. *Bluff City Lumber Co.*, that the judgment in the present case must be reversed. It is the well settled rule of this court to reverse only for errors prejudicial to the rights of an appellant.

(4)   In the *Holmes* case the court was dealing with a different state of the record to that in the present case. There an instruction similar to the present one was requested by the defendant and the trial court refused to give it. This court refused to reverse the judgment because the defendant did not ask the instruction in proper form. Here we have the converse of the proposition. The court gave the instruction at the request of the plaintiff. If counsel thought the instruction was open to the objection now made to it, they should have made a specific objection to the instruction, and not having done so, they are in no attitude to ask for a reversal of the judgment on this account. *St. Louis, I. M. & S. Ry. Co.* v. *Barnett*, 65 Ark. 255; *Western Union Tel. Co.* v. *Wilson*, 97 Ark. 198, and *St. Louis, I. M. & S. Ry. Co.* v. *Stovall*, 98 Ark. 425.

Moreover, the defendant itself asked for an instruction on this point which contained the same defect. He

asked and the court gave instruction No. 10, which reads as follows:

"The court instructs you that it is not the duty of the defendant company to insure the safely of its employees, but it has performed its duty to its employees when it provided them with a reasonably safe place to work, and reasonably safe appliances with which to work. You are instructed that if the defendant provided a machine of standard make, of a type suited to the work it was required to do, and provided with such safety appliances as machines of its sort are usually provided with, defendant had performed its duty to the plaintiff so far as any duty rested upon it to provide plaintiff with a reasonably safe place in which to work, and reasonably safe appliances with which to work."

A comparison of this instruction with the one under consideration shows the instruction asked by defendant to contain the same defect and counsel for the defendant having asked for an instruction containing the same defect, can not complain of the one given by the court.

It follows that the judgment must be affirmed.