On June 14, 1912, Rebecca Cole, defendant in error, sued St. Louis San Francisco Railroad Company, plaintiff in error, in the district court of Murray county, in damages for the negligent killing of her husband, E.O. Cole. The petition, after making certain formal allegations not necessary here to mention, substantially states that on April 10, 1912, her husband was engaged at Fletcher, Okla., in loading stock into one of defendant's cars set by defendant upon its spur track opposite a chute on its stock platform; that the platform was 25 feet long and 4 feet 4 inches high and was 3 feet *Page 3 
4 inches from the near rail of said spur track; that, after the car was loaded, an engine, detached from a train on the main track, backed upon the spur track for the purpose of picking up said car of live stock; that, before coupling onto it, a member of the train crew told Cole that the door of the car was not properly fastened at the bottom; that thereupon, while members of the train crew were standing by, deceased went between said platform and the car to fix the same, whereupon the train crew, knowing the perilous position, without notice to him, negligently moved the train and crushed him between the platform and the car — to her damage in a sum certain. After answer filed, in effect, a general denial and a plea of contributory negligence, and issue joined by reply, there was trial to a jury and judgment for plaintiff, and defendant brings the case here.
It is assigned that the evidence was insufficient to take the question of negligence to the jury, and hence the court erred in overruling the motion, at the close of all the evidence, to instruct peremptorily for defendant.
In Solts v. Southwestern Cotton Oil Co., 28 Okla. 706,115 P. 776, we said:
"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith. Where the evidence is conflicting, and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that *Page 4 
evidence only which is favorable to the party against whom the motion is leveled."
Thus guided, the evidence reasonably tends to prove that on April 10, 1912, defendant placed one of its stock cars on its spur track, running north and south at Fletcher, alongside its stock platform, to enable deceased to load it with stock to be transported by defendant as a common carrier. The platform was 25 feet long and 4 feet 6 inches high, and was so much shorter than the car that the car projected beyond the platform at both ends. At the south end the distance between the platform and the car was from 18 to 24 inches, and from 8 to 10 inches at the north end. The door in the side of the car was placed opposite a chute, leading from the stock pens, which connected with the car by gates on each side the car door. After the stock had been loaded in the car, the door, which was intended to slide from right to left on a "keeper" at the bottom, was closed and the car sealed by those assisting deceased in loading. After this was done, deceased's attention was called by a member of the train crew to the fact that the door was loose from the "keeper," whereupon deceased had the same unsealed and placed within the "keeper" and resealed. All this time the car had not been moved, but was standing opposite the chute, where it had been loaded. About that time a freight train came in from the south on its way towards the destination of the stock, whereupon the engine was detached and backed southward upon this spur track for the purpose of coupling onto this stock car and placing it in the train on the main track. In so doing it first coupled onto an oil car standing north of this stock car on the spur track a short distance away, and stopped. At that time deceased was standing on the ground at the north end of the platform near a brakeman in the train crew, and, while so standing, the *Page 5 
engine backed the oil car down upon the stock car, to which it was coupled by the brakeman. After making the coupling, and before mounting to the top of the stock car, the brakeman expressed to deceased his opinion that the door of the car would not hold, and advised deceased to fix it. It seems that, at the bottom of the door nearest deceased, the iron pin was missing which held that corner of the door secure to the car by passing through plates designated for that purpose, and that upon being so advised, while the car was still standing, deceased attempted to get to the door to fix it, and was passing between the platform and the car, when the brakeman mounted the stock car and signaled the engineer to pull out, which was done without warning to deceased; the forward movement of the cars crushing him between the platform and the car, throwing him out at the point of entrance and injuring him to such an extent that he died. There was some conflict in the evidence as to whether the train did not back on south, after coupling onto the stock car, and couple onto a car of cotton some 20 feet away, before pulling out. But resolving, as we must, all controverted questions of fact in favor of the plaintiff, we are bound to say that such it did not, which is in keeping with the testimony of the witness who viewed the accident from a telephone pole a short distance away, and whom the jury believed in preference to certain of the train crew, who testified to the contrary. In view of which we say the evidence reasonably tends to prove that deceased entered between the platform and the car at the suggestion of the brakeman while the train was standing still and while the brakeman was mounting to the top, and met death, as stated.
33 Cyc. 809, lays down the rule thus: *Page 6 
"It is the duty of a railroad company to use reasonable care and precaution in the operation of its trains or cars, so as to protect persons working on or about its tracks, upon its express or implied invitation, from dangers of which it knows or ought to know. * * * As to persons working on or about a railroad company's cars, upon its express or implied invitation, the company owes the duty of exercising reasonable care and precaution to avoid injuring them. In such cases the railroad company should exercise ordinary care in maintaining the cars, * * * and should likewise use such care in the movement of trains or cars which are likely to injure a workman, of whose presence it has or ought to have knowledge. * * *"
In Linker v. Union Pac. R. Co., 82 Kan. 580, 109 P. 678, the court quotes approvingly from 3 Elliott on Railroads, sec. 1265c, thus:
"Shippers and consignees of freight on railroad premises, for the purpose of loading and unloading cars, are properly there, and are not trespassers, or bare licensees, and the railroad company is bound to use reasonable care to avoid injuring them while so engaged. If such persons, while so engaged, and without negligence on their own part other than that inattention to their own safety which an absorption in the duties in which they are engaged naturally produces, are hurt by the negligence of the railway company, they have an action for damages. It is a duty of switch crews with knowledge, or the means of knowledge, that persons are loading or unloading cars, to warn them of an intention to switch cars over a track on which their car is placed."
See, also, Thompson on Negligence (White's Supp.) sec. 1841.
In other words, the degree of care which the railroad company owes a person on or about its cars turns upon the question of whether he is rightfully or wrongfully at *Page 7 
the place where he is injured. If he is wrongfully there, he is a trespasser or a mere licensee, to whom defendant owes no duty, except not to willfully injure him; or, at most, defendant is not liable unless the injuries complained of are caused by its failure to exercise reasonable care after he is observed to be in a dangerous position. 33 Cyc. 809. But when he is rightfully at the place where injured, as he was here, if the servants of defendant knew or had reason to suspect his presence there, it was their duty to notify him that the car was about to be moved, and a failure so to do, resulting in injury, was negligence on the part of defendant.
In Central of Ga. Ry. Co. v. Duffey, 116 Ga. 346, 42 S.E. 510, the facts were that plaintiff was employed by another as a laborer to sack and load corn in cars belonging to the defendant railway company for transportation; that, while he was so at work in one of the cars, the servants of the company, without warning, coupled an engine to the car, and as the car moved off it was derailed, owing to defects in the track, and turned over and injured plaintiff. As to the duty that defendant owed plaintiff, the court said:
"If the plaintiff was rightfully in the car, and the servants of the company knew or had reason to suspect his presence there, it was then the duty of the company to notify him that the car was about to be moved. * * *"
In Chesapeake Ohio Ry. Co. v. Plummer, 143 Ky. 97, 136 S.W. 159, the facts were that at Vanceburg the company had a main track, a passing track, and a house track. On the house track a car had been placed for the purpose of loading tan bark. While Plummer and other employees of the shipper were in said car engaged in placing the bark, a freight train going east stopped at the *Page 8 
station to do some switching. In the course of so doing, it became necessary to move the car in which Plummer was working out upon the main track, which was done, and thereafter the car was then placed at the point it stood before it was moved. After that the trainmen, desiring to place another car on the house track, made a "running switch" and sent that car, detached from the engine, onto the house track at a rapid speed, and struck the car in which Plummer was at work, and injured him. On this state of facts, it was held the court was right in refusing to direct a verdict for defendant. Speaking to the presence of Plummer in the car, the court said:
"But, whether the trainmen had actual knowledge of this fact or not, certain it is that, by the exercise of ordinary care, they could have known it, and so both by the information in the possession of the station agent, as well as the knowledge on the part of the trainmen, it is clear that the company had notice that men were engaged in loading the car."
In the syllabus the court said:
"When a railway company places a car on its tracks for the purpose of being loaded or unloaded by the owner of the property contained in or being put in the car, the persons who are engaged in loading or unloading the car are rightfully upon the premises of the company, and it owes them the duty of exercising ordinary care to avoid injury to them, if the fact that they are engaged in or about the car is known or in the exercise of ordinary care could have been known to the trainmen. Before moving or disturbing a car in or about which persons are engaged in loading or unloading, it is the duty of the trainmen, if the station agent knows or if they know, or in the exercise of ordinary care could know, that such persons are engaged in or about the car, to give them reasonable notice before moving or disturbing the car; and, if a person so engaged in loading or unloading a car is injured by the *Page 9 
negligence of the company or its employees, it will be liable in damages for any resulting injury, unless the injured party is guilty of such contributory neglect as would defeat a recovery."
Elgin, etc., Ry. Co. v. Sarah Ann Thomas, Adm'x, 115 Ill. App. 508, was a suit in damages for personal injuries. The facts were that the deceased, husband of the plaintiff, was accompanying a shipment of stock and was crossing defendant's track at the time he was injured. In affirming the judgment of the trial court, which refused to direct a verdict, the court said:
"The owner of the cattle had implied consent of appellant to cross over the yards and to look after his property. The case is controlled by the doctrine applied to persons who are rightfully upon the railroad track or near it for the purpose of loading or unloading freight. In such case the company owes such persons the duty of exercising reasonable care for their safety. Am. Eng. Ency. (2d Ed.) vol. 23, p. 739. The fact that no agent of appellant knew that plaintiff's intestate was there can make no difference. Appellant knew, or by the exercise of the slightest attention might have known, these cattle cars were there, and to make a running switch and throw a string of freight cars into the yard without any warning is evidence of gross negligence, and will justify a verdict in behalf of any one who is rightfully upon the yards and is thereby injured while he is in the exercise of reasonable care for his own safety."
In Watson v. Wabash, etc., Ry. Co., 66 Iowa, 164, 23 N.W. 380, the first section of the syllabus reads:
"The plaintiff was a teamster who was engaged at the time in loading lumber, owned by his employer, upon his wagon from a car standing on one of several side tracks. He had warning of an approaching engine, but not of an approaching car, and he did not know on what track the engine was approaching. With a view of protecting himself and his team from possible danger, which, however, *Page 10 
he had no reason to think imminent, he undertook to dismount from the car, and, in doing so, placed his left foot upon a link which projected from the drawhead of a car standing on the same track and near to the car which he was unloading. Just then a car, of whose approach plaintiff had had no notice, was thrown against the one on the link of which his left foot was resting, and it was thrown against the car from which he was dismounting, crushing his foot between the drawheads of the two cars. Under all the circumstances of the case (see opinion), held: * * * (2) That since plaintiff was rightfully where he was, and since the car was placed where it was for the purpose of unloading, and since, even if defendant's employees did not know that plaintiff was there, they had reason to anticipate that some one might be there, it was negligence on their part thus to throw the car back, as they did, upon others standing upon the side track for the purpose of unloading."
In the body of the opinion the court said:
"If the plaintiff was rightfully there, the company owed him the duty of such care as is necessary for the safety of all persons engaged as he was; and it was not for the company's employees to close their eyes and excuse themselves by saying that they did not know that any one was being imperiled."
It will not do to say that the loading in question was completed, and hence deceased was not entitled to the benefit of the rule, but that, having assumed a position of safety at the north end of the platform after the loading was completed, he was a trespasser to whom the company owed no duty, except not to injure him after his peril was discovered. This for the reason that, so long as the door was not properly fastened, the loading was not complete; hence deceased was rightfully on the premises while attempting to fix it. *Page 11 
In Southern Ry. Co. v. Goddard, 121 Ky. 567, 89 S.W. 675, 12 Ann. Cas. 116, the shipper was injured after loading the horses. At that time he discovered there was no room in the car for one of the sulkies. In going around the car to see if the south door was securely fastened, he fell into a ditch and was injured. The court said:
"But the loading was not complete until the vehicles and trappings of the shippers were also placed in or about the car, the horses haltered in their proper places, the doors of the car securely fastened. * * * "
And plaintiff was brought within the rule. In the syllabus it is said:
"A shipper of stock, who is on the railroad's premises engaged in loading the stock into a car furnished him for that purpose, or in performing necessary duties relative to the final preparation of the car for shipment, is not upon the premises as trespasser or licensee, but by invitation as a customer, and the carrier is required to exercise ordinary care to make its premises safe for his use."
Neither will it do to say that deceased was assisting defendant's servants gratuitously at the time he was injured, and therefore was not within the protection of the rule. This for the reason that in attempting to assist, as he did, he was neither a trespasser, a licensee, nor a volunteer, but was rightfully upon the premises expediting his own and defendant's business, and hence was within its protection.
In Mummaugh v. Western Maryland Ry. Co., 98 Md. 125,56 A. 394, 103 Am. St. Rep. 388, 1 Ann. Cas. 599, the court quotes from Thompson on Negligence, p. 1045, sec. 42, where the learned author says:
"* * * Care must be taken, however, to distinguish the case of a mere volunteer from that of one *Page 12 
assisting the servants of another, at their request, for the purpose of expediting his own business or that of their master."
Concerning the rights of the latter, the court citesWright v. London N.W. R. W. Co., L. R. 1 Queen Bench Div. 252, concerning which it said:
"The facts of the last named cases were as follows: The plaintiff sent a heifer by defendant's railway. On the arrival of the train at the station, there being only two porters available to shunt the car to a siding, from which alone the heifer could be delivered to the plaintiff, in order to save time he assisted in shunting the car, and while so doing he was run against and injured through a train being negligently allowed by defendant's servants to come out of the siding. There was evidence that the station master knew that plaintiff was assisting in shunting and assented to his doing so. It was held that the plaintiff was not a mere volunteer assisting the defendant's servants, but was on defendant's premises with their consent for the purpose of expediting the delivery of his own goods, and the defendants were therefore liable to him for the negligence of their servants."
We are therefore of opinion that, as the evidence reasonably tends to prove that deceased was rightfully on the premises and between the platform and the car in aid of his own and defendant's business, in obedience to the suggestion of one of the train crew who knew, or by the exercise of ordinary care should have known, be was there for that purpose, the court did right to leave it to the jury to say whether defendant was negligent in moving the train as it did while deceased was in that perilous position. See, also, Chicago E. R. R. Co. v.Shaw, 116 Fed. 621, 54 C. C. A. 77; C. O. Ry. Co. v. Wiley,
90 S.W. 557, 28 Ky. Law Rep. 770; Jacobson, Adm'x, v. St. Paul D. R. R. Co., 41 Minn. 206, 42 N.W. 932; Dooley *Page 13 v. M., K. T. Ry. Co., 50 Tex. Civ. App. 298, 110 S.W. 135;Texas N. O. R. Co. v. McDonald (Tex. Civ. App.) 85 S.W. 493;Butler v. Chicago, R.I. P. Ry. Co., 155 Mo. App. 287, 136 S.W. 729.
But says defendant: As the petition alleges that defendant knew of the perilous position of deceased at the time he was injured, and the proof tends at most to prove that defendant, in the exercise of ordinary care, could have known that fact, there was a material variance between the allegation and the proof, and hence the court erred in sending the case to the jury. There is no merit in this contention. Rev. Laws 1910, sec. 4784, provides:
"No variance between the allegations, in a pleading, and the proof, is to be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended, upon such terms as may be just."
Besides, it nowhere appears that the alleged variance was called to the attention of the trial court or sought in any manner to be taken advantage of in the trial of the cause.
Quoting approvingly from 22 Enc. of P. P., 640, this court, in Patterson v. M., K. T. Ry. Co., 24 Okla. 747, 104 P. 31, said:
"A variance may be waived by failing to object at the proper time to the admission of evidence on the ground that it does not correspond to the allegations of the pleading in support of which it is offered, by admission in the pleading of the party who would otherwise be in a position to take advantage of the variance, or by a failure to allege surprise, seek postponement of the trial, or take *Page 14 
other steps that are essential to make the question of variance available on appeal."
Such being the state of the record, and it not being clear that a variance exists, we will consider the pleading amended so as to conform to the proof and to charge that the peril of deceased was known, or in the exercise of ordinary care could have been known, to the trainmen at the time they moved the train, to the injury of the deceased.
From what we have said, it follows the court did not err in charging the jury thus:
"You are instructed that if you believe from the evidence in this case that, at the time the husband of the plaintiff was killed, he was engaged in loading a carload of stock, which he was about to ship over the defendant's road from the town of Fletcher, Okla., and that, while so engaged, he was standing between one of the defendant's cars and the platform of the defendant, from which the stock was loaded, for some purpose connected with the care of said stock or of the car in which the stock was situated, and if he was there with the knowledge of the trainmen in charge of the defendant's train, or if the trainmen in charge of defendant's train had the means of knowing, by the use of ordinary care, that he was so situated between the car and the said platform, then, in that event, it was the duty of the trainmen in charge of said train, before undertaking to in any manner move the said car, to warn the said deceased of their intention so to do, in order that he might reach a place of safety. And a failure to so warn the said deceased, if they did so fail, would be negligence, for which the defendant would be liable in this case."
There is no reversible error contained in instruction No. 2, which charges almost verbatim the first two sentences of the quotation from 3 Elliott on Railroads, sec. 1265c, supra. The second sentence, alleged to be error, *Page 15 
only means that one who, as here, enters upon the premises in the discharge of a duty connected with his shipment, has a right so to do with that absorption in the discharge of those duties which they naturally produce, and rely upon the defendant not to injure him by the negligence of its servants when there. Instead of being a "novel proposition," as claimed, this is a fair statement of a general rule applicable to this case.
There being no merit in the remaining assignments, the judgment of the trial court is affirmed.
All the Justices concur.