## CHICAGO, R. I. & P. RY. CO. v. STEINBERGER.

No. 8628—Opinion Filed March 12, 1918.

(171 Pac. 716.)

(Syllabus.)

### Carriers —Shipper Accompanying Live Stock —Care Required.

The owner and shipper of live stock, accompanying the shipment while in transit for the purpose of feeding and caring for same under contract with the carrier, has the implied consent of the company to cross over the tracks of its yards for the purpose of looking after his property, while the car is delayed in the yards of the company, awaiting further transportation to its destination. In such case the company owes to the plaintiff the duty of exercising reasonable care for his safety.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by P. Steinberger against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. H. Moore, C. O. Blake, R. J. Roberts, J. E. Du Mars, and Bond & Kolb, for plaintiff in error.

Ledbetter, Stuart & Bell and Womack & Brown, for defendant in error.

KANE, J. This was an action for damages for personal injuries, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. Upon trial to a jury there was a verdict for the plaintiff, to reverse which this proceeding in error was commenced.

The petition alleged, in substance, that at the time of his injury the plaintiff was in Oklahoma City, in charge of a car of live stock being shipped by him over defendant's line of railway; that while said car was in the yards of said company at said point waiting further transportation to its destination, the same was moved from its original location to another place in said yards; that on this account the plaintiff was required to pass across the tracks of the defendant in order to get to his said car of stock for the purpose of feeding and caring for the same, as under his contract of carriage with the

company he was required to do; that he was directed by the agents and servants of said defendant in charge of said yards as to the location of his said car of stock, and was given directions by them as to how to reach said car of stock, being directed by them to cross said tracks of the defendant; that while returning from said car to the yard office after caring for said stock, one of the engines of the defendant railway ran against and struck said plaintiff, and hurled him to the ground and injured him; that the agents and servants in charge of said engine ran the same against said plaintiff without giving any warning of its approach, either by ringing the bell or blowing the whistle, or by any other sign, and that said train was going at a rate of speed exceeding the speed of six miles an hour, and was running at a speed in excess of the limit provided by the ordinances for the running of trains and engines through said city.

It is conceded that there is evidence reasonably tending to support the verdict of the jury, the only assignments of error relied upon for reversal being directed against the action of the trial court in refusing to give defendant's requested instructions No. 5 and 8, and in giving certain other instructions over the objection of the defendant. In their brief counsel for plaintiff in error have resolved their various assignments of error into one proposition, which they state as follows:

"That if the plaintiff went into the yards looking for his car, after he had been instructed to remain in the yard office until notified by the yardmaster, he was, while in the yards, a trespasser, and the defendant owed him no duty except not to wantonly or willfully injure him."

It is true that there was some evidence tending to show that after the car had been set to the chutes and the cattle fed and watered, the plaintiff was advised by the yardmaster that the car would be taken out about 9 o'clock that night, and that in the meantime the plaintiff must stay in the office of the yards until he was notified the car was ready to move; that the plaintiff, after remaining in the office until after the time he was told his car would leave, became uneasy for fear he would be left, and went down into the yards looking for his car, in disregard of the directions of the yardmaster. We are unable to agree with counsel that this, if true, would constitute the plaintiff a trespasser. The general rule is that the owner and shipper of live stock accompanying the shipment while in transit for the purpose of feeding and caring for same

under contract with the carrier has the implied consent of the company to cross over the track of its yards for the purpose of looking after his property, while the car is delayed in the yards of the company, awaiting further transportation to its destination. In such case the company owes to the plaintiff the duty of exercising reasonable care for his safety. '23 Am. & E. Enc. (2d Ed.) 739; Elgin, etc., Ry. Co. v. Thomas, Adm'x, 115 Ill. App. 508; Railway Co. v. Cole, 49 Okla. 1, 149 Pac. 872. The mere fact that the yardmaster directed the plaintiff to remain at the yards office until he was notified that his car was ready to go does not change the rule. There is nothing in the evidence tending to show that the plaintiff was required to remain at the yards office by any well-known established rule of the company, or that the yardmaster was authorized by such rule to require the plaintiff to do so. In these circumstances, the plaintiff was entitled to such reasonable freedom of action in the performance of his contract with the carrier as the circumstances required, and whether he was negligently exceeding this reasonable freedom of action or not, at the time he was injured, was a question for the jury.

Finding no reversible error in the record, the judgment of the court below must be affirmed.