## INTERNATIONAL LIFE INS. CO. OF ST. LOUIS, MO., v. BRADLEY et al.

No. 15253—Opinion Filed April 27, 1926.

(Syllabus.)

1. **Principal and Agent—Payee of Note and Mortgage as Agent of Assignee for Collections—Proof.**

A. S. Co., Inc., was the payee in a note secured by a farm mortgage. The mortgage recited that the interest and principal were payable at the office of A. S. Co., Inc. The note and mortgage were sold and assigned for face value. The recital of the place of payment or interest and principal did not of itself make the payee the agent of the assignee for that purpose, but the payee may be shown to have been given the authority to act as agent for the assignee in making such collections by facts and circumstances establishing the course of dealing between them.

2. **Same—Proof of Agency by Course of Dealing Between Payee and Assignee.**

When a note is sold, and the farm mortgage securing same is assigned by the payee to a third party, which mortgage recites that the principal and interest are payable at the office of the payee, and the assignee collects the interest continuously for a period of five years through the payee, receiving its checks therefor, sending the maturing coupons to the payee to be delivered to the mortgagor, and carries on all negotiations as to insurance and taxes through the payee, and this is shown to be the method or course of dealing between the assignee and the payee as to a large number of other loans so assigned by the same payee, and in one or more instances part of the principal on a similar loan was collected, placed on the books of payee to credit of assignee, and there allowed to remain for more than a year to the assignee's knowledge, such evidence of the course of dealing is sufficient to sustain a verdict that the payee was the authorized or ostensible agent of the assignee to receive a partial payment of the principal.

Error from District Court, Garvin County; A. C. Barrett, Judge.

Action by J. F. Bradley et ux. against the International Life Insurance Company of St. Louis, Mo. Judgment for plaintiffs, and defendant brings error. Affirmed.

Wilson, Tomerlin & Threlkeld, S. S. Chandler, Jr.; and H. G. Butts, for plaintiff in error.

Blanton, Osborn & Curtis, for defendants in error.

BRANSON, V. C. J. J. F. Bradley and Mattie Bradley, as plaintiffs, obtained a judgment in the district court of Garvin county against the International Life Insurance Company of St. Louis, Mo. From this judgment, the losing defendant appeals. The parties are referred to as they appeared in the trial court. The prayer of plaintiffs' petition was that a certain mortgage on real estate owned by the plaintiffs be adjudged and decreed satisfied, to the extent of $2,000, and the lien of said mortgage to that extent released, adjudging and decreeing that there remain an amount due of $1,500 and interest on the mortgage, and no more, and that the mortgage be adjudged and decreed fully paid and satisfied on the payment of $1,500, with interest, as per the terms thereof.

The plaintiffs had borrowed $3,500. by executing a note and mortgage on real estate to Aurelius-Swanson Company, Inc., of Oklahoma City. This mortgage was in the principal sum of $3,500, and bore 6 per cent. interest from date. A second mortgage was at the same time and place executed, which secured certain so-called "commission notes." The only mortgage involved here is the principal mortgage. It was assigned by the mortgagee long before its maturity, and on the 22nd day of August, 1916, to the International Life Insurance Company, the defendant herein. The mortgage was conditioned upon the payment of the promissory note, made by the plaintiffs, and payable to Aurelius-Swanson Company. The mortgage recited that "Principal and interest payable at the office of Aurelus-Swanson Co., Inc." This office was in Oklahoma City, Okla. The commission notes were promptly paid at maturity, to Aurelius-Swanson Company. In 1918 the plaintiffs paid to Aurelius-Swanson Company, at an interest paying period, to be applied on the principal note and mortgage, the sum of $2,000. Receipt of this amount was acknowledged by a letter addressed by Aurelius-Swanson Company to the plaintiff J. F. Bradley, acknowledging receipt of the said $2,000, which letter, among other things, recited: "You may hold this letter as receipt for the above payments. Thanking you kindly for this remittance, and with very best wishes, believe us to be, Yours very truly. Aurelius-Swanson Co., By Fred H. Porter."

That the plaintiffs paid this $2,000 is not disputed. It is further not disputed that the International Life Insurance Company did not receive this $2,000 from Aurelius-Swanson Company, although it was the owner of the note and mortgage at the time the $2,000 was paid to be applied thereon. The sole question in this case is whether or not Aurelius-Swanson Company had authority

or ostensible authority from the assignee of the note and mortgage, to wit, the defendant life insurance company, to collect this money for it. If so, Aurelius-Swanson Company was the agent of the life insurance company for this purpose, and the payment as made was binding upon the defendant.

The court in effect instructed the jury that if it was found that Aurelius-Swanson Company was the agent of the defendant, for the purpose of collecting the interest and principal, plaintiffs were entitled to credit for the $2,000; that agency might be established by acts and conduct of the parties; that when a person by his conduct and acts permits another person to hold himself out as the said first person's agent and the circumstances surrounding the conduct of the parties are such as to lead a person of ordinary prudence to act upon the relation of principal and agent, which from the acts and conduct of the parties appears to be the true relation between the parties, and such party does so act in good faith, under such circumstances the law would presume that the agency existed, at least to the extent of protecting the party against injury, where he acted in good faith with the person holding such ostensible authority.

The acts and conduct in evidence in this case between the defendant and the Aurelius-Swanson Company are disclosed by the record to be in substance these:

The mortgage recited that it was "Payable at the office of Aurelius-Swanson Co., Inc." This mortgage was assigned to the defendant. The defendant availed itself continuously of this provision, in this, that Aurelius-Swanson Company collected each interest coupon from mortgagors and forwarded its personal check in payment therefor to the defendant, which was accepted and acknowledged as the interest payment on said note. When the assignment was made to the defendant, it requested Aurelius-Swanson Company to see that the same was placed of record. It looked after the satisfaction of record of certain erroneous taxes on the land, gave notice long after the assignment to the defendant went of record, to the plaintiffs of the date of each interest payment, accepted the interest payments, and remitted them in turn to the defendant.

Among the oral testimony taken, was that of one Albert. Albert was the manager of the farm loan department of the defendant. Among other questions asked, was one in substance this:

"Why did the International Life Insurance Company send the interest coupons to Aurelius-Swanson Company for collection, on the loans purchased by the company from Aurelius-Swanson Company? A. They requested it. Q. Who requested it? A. Aurelius-Swanson requested that we let them make the interest collections, and volunteered to look up taxes and insurance and matters of that kind. We permitted them to do it."

As to another loan purchased from Aurelius-Swanson Company, the record discloses that one Grinstaff had paid $2,000 on the principal to the Aurelius-Swanson Company, in December, 1919. That Aurelius-Swanson Company placed this amount on its books, to the credit of the defendant, but did not even notify the defendant of this payment. The defendant ascertained from Grinstaff himself that the payment had been made, which information was obtained in August, 1920. The defendant notified Aurelius-Swanson August 2, 1920, that it had received no information as to this payment made the previous December. On August 20th the defendant was advised by letter, in reply to the letter of August 2nd, that it (Aurelius-Swanson Company) begged to advise that its record showed $2,000 on its books to the credit of the defendant, on the Grinstaff loan, and it would be glad to send the defendant an attractive $2,000 loan for the amount. It further is disclosed by the record that this $2,000 continued to remain with Aurelius-Swanson Company and on their books to the credit of the defendant until April 5, 1921, and on the last date the defendant notified Aurelius-Swanson Company it had received the money. When its officer, Mr. Barkley, was questioned in regard to why this $2,000 remained in the hands of Aurelius-Swanson Company, paid in December, 1919, advice of which payment was by it received not until August, 1920, was not demanded until April 5, 1921, he stated, in effect, that he knew that Aurelius-Swanson Company during that time was carrying a credit to the defendant insurance company in the sum of $2,000, but his answer failed to disclose why it was permitted to remain with the Aurelius-Swanson Company.

In the record, from page 194 to page 284, are a large number of letters from Aurelius-Swanson Company to the defendant, and from the defendant to Aurelius-Swanson, transmitting moneys and acknowledging receipt of moneys paid on interest and principal of notes and mortgages transferred by Aurelius-Swanson Company to the defendant life insurance company. These are too voluminous to undertake to set them out, even by way of synopsis. It appears from the

oral evidence of the officers of the defendant company, further, that all of the loans it had purchased from Aurelius-Swanson Company were handled in the same way as the Bradley loan was handled. It further appears from the record that not until after Aurelius-Swanson Company had gone into bankruptcy did the defendant life insurance company ever notify the plaintiffs Bradley that it looked to the plaintiffs for the payment directly to it of either the interest or the principal. Aurelius-Swanson Company went into bankruptcy the latter part of 1921. At that time the defendant had owned the mortgage in question over 5 years, and all the transactions concerning same had been had by the defendant with Aurelius-Swanson Company, and by Aurelius-Swanson with the plaintiffs, the Bradleys. Under these circumstances, the question of the agency of Aurelius-Swanson Company for the defendant life insurance company, and the actual or apparent authority of said agent, was submitted to the jury by the trial court. The jury's verdict in effect found that Aurelius-Swanson Company was the agent of the defendant, or had such ostensible authority.

In the case of National Surety Co. v. Miozrany, 53 Okla. 322. 156 Pac. 651, this court said:

"In legal significance, an agent's authority is the sum total of the powers which his principal has caused him or permitted him to assume to possess. It is not limited to the powers actually conferred and to those to be implied as flowing therefrom, but includes as well the apparent powers which the principal by reason of his acts or conduct is estopped to deny." Citing numerous authorities."

Again it says:

"And as between the principal and a third person, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny." Citing many cases.

In the case of Johnson v. Investment Co., 46 Neb. 480, 64 N. W. 1100, it is stated:

"Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usage and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal a particular act, such particular act having been performed, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform it."

In the case of Hamlin et al. v. Nance (Kan.) 161 Pac. 655, the court said:

"Where a loan from two mortgagees is negotiated through a loan broker, and the principal and interest are payable at the broker's office, and the money loaned is remitted to him to be paid to the borrowers, and the broker divides his commission with one of the mortgagees, and where the mortgagees are accustomed not to forward coupon notes or principal notes to the designated place of payment—the broker's office—but to retain them until he collects the payments of interest and principal thereon and remits the money to them, and where it is shown that this is the customary course of business, not only as to this loan, but also on a number of similar loans made through the same broker on behalf of the same mortgagees, and that they transacted all such business in that locality in this manner, such evidence is sufficient to warrant the conclusion that the broker was the authorized or ostensible agent of the mortgagees to receive partial payments on the principal of the mortgage debt payable at interest-paying periods."

The authority of an agent to receive payment for the owner of a negotiable note need not be shown by direct testimony, but may be established by circumstances. Astoria State Bank v. Markwood (S. D.) 156 N. W. 583; U. S. Fidelity & Guaranty Co. v. Shirk et al., 20 Okla. 576. 95 Pac. 218; Mechem on Agency. sec. 83; Campbell v. Gowans (Utah) 100 Pac. 397; Dispatch Printing Co. v. Natl. Bank of Commerce, 124 N. W. 236; Fitzgerald v. Beckwith (Mass.) 65 N. E. 36; Swan v. Craig (Neb.) 102 N. W. 471; Roberts v. Akers (Ky.) 173 S. W. 164; Morgan v. Neal (Idaho) 65 Pac. 66; Pennypacker v. Latimer (Idaho) 81 Pac. 55; Thompson v. Shelton (Neb.) 68 N. W. 1055.

Reverting again to the record, it appears that the defendant purchased 10 or more loans from Aurelius-Swanson Company; that they were handled similarly to the loan with the Bradleys, the transaction touching said loans being carried on through Aurelius-Swanson Company. We think this was sufficient, if not indeed to make Aurelius-Swanson Company the actual agent of the defendant, it was at least sufficient to justify the jury in finding that a reasonably prudent person would conclude that the Aurelius-Swanson Company had authority from the defendant to collect this money. Nothing for a period of many years was communicated to the Bradleys indicating anything to the contrary, and not until sometime after the said Aurelius-Swanson Company went into bankruptcy.

For the reasons and on the authorities above given, we think that the instructions of the court fairly stated the law, that there was evidence in the record reasonably sustaining the verdict of the jury. The judgment of the trial court is affirmed.

NICHOLSON, C. J., and HARRISON, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 8 C. J. 596 § 830. (2) 2 C. J. p. 622 § 257; p. 956 § 727.