**ILLINOIS BANKERS LIFE ASS'N v. GRAYSON et al.**

No. 17070. Opinion Filed May 24, 1927.

(Syllabus.)

1. **Principal and Agent—Proof of Agency —Declarations of Agent Supplemented by Proof of Course of Dealing.**

Agency cannot be established by the evidence or declarations of an agent or one who purports to act as agent for another, but where the testimony of the alleged agent is supplemented by written communications from the alleged principal giving instructions to the alleged agent relative to the very matters and things concerning which he assumed to act, and also other evidence is introduced showing a course of dealing between the parties covering a number of years wherein the alleged agent was continually doing in other similar matters, with the knowledge and consent of the principal, that concerning which his authority was denied in the instant case, agency is established as a matter of law, and the principal is estopped to deny the same and is bound by the acts of the agent.

2. **Same—Trial—Proof Justifying Instructed Verdict.**

When the evidence clearly establishes the

relation of principal and agent as a matter of law, and where, as in the instant case, it is the only issue involved, it becomes the duty of the trial court to instruct a verdict.

Error from District Court, McIntosh County; Harve L. Melton, Judge.

Action by the Illinois Bankers Life Association against Stella V. Grayson et al. Judgment for defendants, and plaintiff brings error. Affirmed.

Allen & Roddie, ror plaintiff in error.

Charles R. Freeman, for defendant in error.

HUNT, J. This is an appeal from the district court of McIntosh county by the Illinois Bankers Life Association from a judgment rendered on an instructed verdict of the jury against it and in favor of the defendants in error. The parties appear here as in the court below. The facts as disclosed by the record are as follows:

The Illinois Bankers Life Association brought suit to foreclose a real estate mortgage on certain land in McIntosh county executed by Stella V. Grayson on July 10, 1916, the then owner of the land. The note and mortgage with certain interest coupons were made to the Conservative Loan Company, said interest coupons being made payable at their office in Shawnee, Okla. The note also contained the provision that any part of the principal could be paid in multiples of $100 on any interest-paying date after the expiration of two years by giving 60 days' notice in writing. On August 23, 1919, more than three years after the note and mortgage were executed, Stella V. Grayson sold the land to William Jacobs, defendant herein, who assumed the $3,000 first mortgage and the $600 second mortgage. He had an abstract made and examined by a reputable attorney, and this abstract revealed that both the first and second mortgages were still owned by the Conservative Loan Company of Shawnee, Okla. On October 1, 1919, William Jacobs paid to the Conservative Loan Company the full amount of the second mortgage, and also paid to it the $180 interest due on the $3,000 first mortgage. He paid this after receiving notice from the Conservative Loan Company to make payments to it. On September 30, 1920, William Jacobs paid to the Conservative Loan & Trust Company $180 interest due, and $2,000 on the principal of the note, and received a receipt from the Conservative Loan & Trust Company for the $2,000. On September 28, 1922, William Jacobs again paid up the amount of interest due on the $1,000 balance, and made a $500 payment on the principal, thus reducing the loan to $500. On October 1, 1923, having learned, in the meantime, that the Illinois Bankers Life Association owned the note, Jacobs made a tender to this company of the balance of $500 and $32 interest, being $2 more than was legally due. Both this company and its attorney, Joe Bailey Allen, rejected the tender, claiming $3,180 due instead of $530, and notified Jacobs that suit would be brought at once if he didn't pay the full claim of $3,000 and $180 interest. Suit was brought, to which Jacobs answered, alleging that he had paid the plaintiff, through its agent, the Conservative Loan Company, or the Conservative Loan & Trust Company, $2,500; that he owed a balance of $500 with interest for one year, which he had tendered to plaintiff and which tender had been refused by plaintiff; that the Conservative Loan Company and the Conservative Loan & Trust Company were one and the same company, and that both of said organizations had been authorized by plaintiff to collect both principal and interest for plaintiff in this loan, as well as many other loans, and were the agents of the plaintiff; that the defendant, Jacobs, was entitled to have said $2,500 payment credited on his note, and tendered the balance, $532, in open court and asked that same be accepted and his note and mortgage canceled. There was testimony introduced by the old officers of the Conservative Loan Company that these companies were expressly authorized to collect both principal and interest, and that W. H. Woods, the president of the Illinois Bankers Life Association, had verbally made an agreement when he was in Shawnee whereby this company should represent the Illinois Bankers Life Association in collecting the interest and principal on all loans which the Illinois Bankers Life Association had acquired through these companies in Oklahoma; and had the right to collect all loans, both interest and principal, and re-invest same in other loans. The record clearly establishes the fact that the Conservative Loan Company collected loans before they matured in numerous cases and remitted to plaintiff by check or by substituted loans, which they termed replacement loans. Plaintiff knew the Conservative Loan Company carried an account on its books in plaintiff's favor, since they were collecting loans of principal and interest and were advised of

such collections, when replacement loans were substituted in lieu of the cash collected. Both defendant Jacobs and Mr. Woods, president of plaintiff company, testified that no notice was ever given to Jacobs to remit either principal or interest direct to plaintiff until the Conservative Loan Company was thrown into the hands of a receiver in 1923. At that time the plaintiff company had owned this note nearly seven years, and all the transactions concerning it had been had by plaintiff with the Conservative Loan Company or the Conservative Loan & Trust Company. The account of the Illinois Bankers Life Association with the Conservative Loan Company had been credited with these two payments made by Jacobs.

The sole question here presented is whether or not the Conservative Loan Company, or Conservative Loan & Trust Company, acted as agent of the plaintiff in the collection of amounts it is admitted were paid to them on this note and mortgage of Jacobs. There is really no controversy as to the fact of the payments and the circumstances surrounding same; plaintiff's contention being that the Conservative Loan Company, or Conservative Loan & Trust Company, was not its agent, had no authority express or implied to collect either the principal or interest on this note, and that any payments so made by Jacobs were made at his own risk, and the plaintiff, not having received the same, was not bound thereby.

Plaintiff in error contends that no sufficient evidence competent to establish agency was introduced, and therefore proof of payment was not admissible, and requested four instructions, which were refused by the court, the giving of either of which would have amounted to a peremptory instruction for plaintiff. In support of this contention the following authorities are cited: Stapleton Motor Sales Co. et al. v. Coley. 107 Okla. 269. 232 Pac. 28; Oklahoma Automobile Co. v. Benner, 70 Okla. 261, 174 Pac. 567; Chickasha Cotton Oil Co. v. Lamb & Tyner. 28 Okla. 275. 114 Pac. 333; Thorp Oil & Specialty Co. v. Home Oil Refining Co.. 79 Okla. 226. 192 Pac. 573; McDonald v. Strawn. 78 Okla. 271, 190 Pac. 558. We have examined each of these cases, all of which are to the general effect that agency cannot be proved against another by evidence of the declarations of an agent, and where one purports to act as agent for another, that fact of itself is not sufficient evidence upon which to submit the question of

agency to the jury, all of which is good law, and to which we most heartily subscribe. The cases cited, though, are not in point with the instant case, either as to the facts involved or the law applicable. For instance, in Chickasha Cotton Oil Co. v. Lamb & Tyner, supra, which is cited twice in plaintiff in error's brief, it was held error to allow plaintiffs to testify that the messenger of the defendant company, who called them to attend injured employees of the defendant company, stated. that he was sent by the president or manager of the company, and that the company would pay for the services. in the absence of any other evidence showing said messenger to be the agent of the company. The company defended against liability on the ground that the manager was without authority to bind the company to pay for plaintiff's services, and it was held the court erred in refusing to permit the manager to testify as to what his authority was, and that he had no authority from the company to employ physicians to serve its employees in this class of cases. Also Oklahoma Auto Co. v. Benner, supra, was a suit for personal injuries sustained by plaintiff in a collision with a taxicab, which the petition alleged was owned by defendant and negligently operated by one of its agents and employees. Defendant denied ownership of the cab. or that the driver was its agent, and this court properly held that evidence tending to show that one Pendleton, who assumed to act for the company, called on the plaintiff and represented himself as the agent of the company for the purpose of effecting a settlement of the controversy, was insufficient to establish agency in the absence of any other proof.

Plaintiff in error also cites R. P. Smith & Sons v. Raines D. G. Co., 37 Okla. 39, 130 Pac. 133; St. L. & S. F. Ry. Co. v. Brown, 3 Kan. App. 260. 45 Pac. 118; Sloan v. Sloan, 46 Ore. 36, 78 Pac. 893; Ely Walker Dry Goods Co. v. Smith et al., 69 Okla. 261, 160 Pac. 898; Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161. We have carefully reviewed these authorities, and they are to the same general effect as the cases above referred to, and when considered in connection with the facts as disclosed by the record in the instant case. are not, in our judgment, decisive of the issues here presented.

Defendant Jacobs contends that the acts and conduct of the plaintiff in its dealings with the Conservative Loan Company and

the Conservative Loan & Trust Company, in permitting such companies to hold themselves out as the authorized agents of the plaintiff in Oklahoma, and to collect interest and principal on notes of plaintiff, were such acts as would lead a person of ordinary prudence to believe they were the agents of plaintiff, and if believing it, defendant acted upon that belief and made payment to them for plaintiff of principal and interest, plaintiff is estopped to deny such agency.

In the case of National Surety Co. v. Miozrany, 53 Okla. 322, 156 Pac. 651, this court said:

"In legal significance, an agent's authority is the sum total of the powers which his principal has caused him or permitted him to seem to possess. It is not limited to the powers actually conferred, and to those to be implied as flowing therefrom, but includes, as well, the apparent powers which the principal by reason of his acts or conduct is estopped to deny."

In the case of Johnston v. Investment Co., 46 Neb. 480, 64 N. W. 1100, it is stated:

"Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal a particular act, such particular act having been performed, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform it."

In the case of International Life Ins. Co. of St. Louis, Mo., v. Bradley et al., 114 Okla. 231, 246 Pac. 222, the second paragraph of the syllabus is as follows:

"When a note is sold, and the farm mortgage securing same is assigned by the payee to a third party, which mortgage recites that the principal and interest are payable at the office of the payee, and the assignee collects the interest continuously for a period of five years through the payee, receiving its checks therefor, sending the maturing coupons to the payee to be delivered to the mortgagor, and carries on all negotiations as to insurance and taxes through the payee, and this is shown to be the method or course of dealing between the assignee and the payee as to a larger number of other loans so assigned by the same payee, and in one or more instances part of the principal on a similar loan was collected, placed on the books of payee to credit of assignee, and there allowed to remain for more than a year to the assignee's knowledge, such evidence of the course of dealing is sufficient to sustain a verdict that the payee was the authorized or ostensible agent of the assignee to receive a partial payment of the principal."

Under date of January 7, 1921, plaintiff wrote Conservative Loan & Trust Company relative to a number of loans, including the Stella V. Grayson loan, which was assumed by defendant Jacobs and is the loan involved herein, and gave instructions to it relative to remitting interest and principal payments when made, and the president of the plaintiff company testified that this loan was among those referred to, and that Conservative Loan & Trust Company was instructed to send any principal payments that were made. The president of plaintiff company also testified (C.-M. page 52):

"Q. Is the Stella V. Grayson loan, which is now owned by the defendant William Jacobs, the same Stella V. Grayson loan referred to in your letter dated January 7, 1921, addressed to the Conservative Loan & Trust Company, Shawnee, Okla, in which you write: 'We are inclosing you herewith a list of loans which were formerly owned by Woods & Hallam. As we now carry these loans, we will ask that you forward the interest and principal payments, when they become due to our office hereafter,' signed by you, W. H. Woods, president, on the letterhead of the Illinois Bankers Life Association, and attached to page 47, Exhibit C, to the deposition taken before Onie Copeland, notary public? A. I think that is the same loan. * * * That was for the purpose of collection of the interest. * * * Q. You also instructed them to send any principal payments that were made, did you not, Mr. Woods? A. I believe that was in that letter."

The witness also testified as follows (C.-M. page 55):

"Q. And the Conservative Loan & Trust Company and the Conservative Loan Company have, as a matter of fact, collected both principal and interest on a good many loans, and remitted to the Illinois Bankers Life Association? A. They always collected the interest; the matter of the principal was a matter of individual arrangement between the Conservative Loan Company or the Conservative Loan & Trust Company and ourselves. Q. And on this Stella V. Grayson loan you say the Conservative Loan & Trust Company or the Conservative Loan Company did collect the interest for you? A. Yes."

It will be noted that the letter above referred to was addressed to the Conservative Loan & Trust Company, which apparently was the successor to the Conservative Loan Company through some sort of a reorganization, though there was some evidence to the effect that the reorganization was never

completed. However, the personnel of the two companies remained the same, and the parties hereto, both plaintiff and defendant, continued to do business with them as though no change had taken place, but considered the two companies as one and the same, and they have therefore been so considered here. Certainly this testimony alone is sufficient to clearly establish the relation of principal and agent between these parties as to all matters concerning this note and mortgage, and taken in connection with the other facts and circumstances herein, presents one of the strongest cases of this character that has come under our observation.

. The only other cases cited by plaintiff are Foster v. Augustanna College & Theological Seminary, 92 Okla. 96, 218 Pac. 335; Chase v. Commerce Trust Co. et al., 101 Okla. 182, 224 Pac. 148; Wendling et ux. v. Aurelius-Swanson Co. et al, 106 Okla. 63, 232 Pac. 932. These cases are cited in support of the proposition stated on page 69 of plaintiff in error's brief, as follows:

"The note sued on herein being a negotiable note, and being in the hands of the owner in due course for value before maturity, it was necessary to pay to the owner and holder of the note the indebtedness due thereunder, or to someone authorized by it to accept said payment." (Emphasis ours.)

Chase v. Commerce Trust Company, supra, is especially called to our attention. We have carefully reviewed this case, and it undoubtedly sustains the proposition above quoted from plaintiff in error's brief. but again we are confronted with a different state of facts. We find in the body of the opinion in this case, in 101 Okla. on page 187, as follows:

"It is not claimed that Chase ever constituted Aurelius-Swanson Company his agent for collection of the interest, to say nothing of the principal. or that he ever did anything to lead Osborne or the trust company to believe that it was his agent for any purpose, and even though he had authorized it to collect the interest, this would not imply authority to receive the principal unless the agent had possession of the note and mortgage."

It is readily apparent that this case is not in point with the case at bar, for it is very vigorously contended here that the Conservative Loan Company and the Conservative Loan & Trust Company were the duly authorized agents of plaintiff to receive and collect both principal and interest, and were so held out by plaintiff to defendant Jacobs and the public generally through a course of dealing covering a period of several years, and there is abundant evidence in the record, as hereinbefore quoted, supporting this contention. Plaintiff, of course, denied the authority of the Conservative Loan Company, or the Conservative Loan & Trust Company, to act as its agent in the collection of the principal due on this note, but, in our judgment, by reason of the acts and conduct of plaintiff, as hereinbefore set out, plaintiff is estopped to deny the same, and we must hold that agency was established as a matter of law, and that the payments herein were made to one duly authorized to accept the same, and the owner and holder of the note is bound thereby. It therefore was not only proper, but it became the plain duty of the trial court, to direct a verdict for defendant.

See Eagle Loan & Investment Co. v. Stark et ux., 116 Okla. 151, 243 Pac. 725, wherein it was said:

"It is the general rule that where there is no evidence on an issue before the jury or the weight of the evidence is so decidedly preponderating in favor of one side that a verdict contrary to it would be set aside, it is the duty of the trial judge to direct the verdict. 26 R. C. L. 1068; Empire State Cattle Company v. Atchison, etc., R. Co., 210 U. S. 1. 52 L. Ed. 931; Neely v. Southwestern Cotton Seed Oil Co., 13 Okla. 356, 75 Pac. 537; Harris v. Missouri, etc., R. Co., 24 Okla. 341. 103 Pac. 758; Cooper v. Fleshner, 24 Okla. 47, 103 Pac. 1016; St. Louis, etc. R. Co. v. Cole, 49 Okla. 1, 149 Pac. 872; Supreme Tribe, etc., v. Owens, 50 Okla. 629. 151 Pac. 198."

Finding no error in the record, the judgment of the district court of McIntosh county is in all things affirmed.

BRANSON. C. J., MASON, V. C. J., and HARRISON. PHELPS, LESTER. CLARK, RILEY, and HEFNER, JJ., concur.

Note. See under (1) 2 C. J. p. 463, §71; p. 935. §692; pp. 954. 956, §727; p. 961, §731; p. 964 §733; anno. 17 L. R. A (N. S.) 219; 21 R. C. L. p. 821; 3 R. C. L. Supp. p. 1193; 4 R. C. L. Supp. p. 1431; 5 R. C. L. Supp. p. 1173; 6 R. C. L. Supp. 1285. (2) 2 C. J. p. 961, §731; p. 964, §733.